## Moore and Wife *versus* Pennsylvania Railroad Co.

1. A boy of ten years old, bright, intelligent, strong, healthy and of rather exceptional capacity, was sent by his parents upon an errand along a street in a populous suburb of a city on which a railroad track was constructed. He was run over and killed by a passing train, moving at a very rapid rate of speed without whistle or other signal. The only witness of the accident declared that he saw the boy walking upon the outer ends of the sleepers a single instant before he was struck. The street was of ample breadth and had sufficient side-walks, and the errand upon which the boy was sent did not require him to cross the track at the point where he was killed. In an action by the boy's parents against the railroad company to recover damages for his death, the plaintiffs adduced evidence which showed the facts to be as above. The court thereupon awarded a nonsuit on the ground of the boy's contributory negligence. *Held*, that this was not error.

2. Cauley v. Pittsburgh, Cincinnati and St. Louis Railway Co., 14 Norris 398, approved and followed.

January 6th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas No. 3, of *Philadelphia county :* Of January Term 1881, No. 179.

Trespass, by Thomas Moore and wife against the Pennsylvania Railroad Company, to recover damages for the death of their son, Thomas B. Moore, caused by the alleged negligence of the defendants' servants.

On the trial, before LUDLOW, P. J., the evidence on behalf of the plaintiffs was to the following effect :—The defendant's railroad runs along Trenton avenue, in a populous part of the suburb of Frankford, in the 25th ward of the city of Philadelphia, uninclosed by a fence. The avenue at the point in question is not paved, but there is a sidewalk for pedestrians. The plaintiffs occupied a house on the west side of Trenton avenue, above Orthodox street. About half-past eight o'clock on the evening of April 30th 1879, Mrs. Moore sent her boy, Thomas, a bright lad of nine years of age, on an errand to a store on Orthodox street, east of Trenton avenue, which made it nec-

[Moore *v.* Pennsylvania R. R. Co.]

essary for him to cross the railroad. A few minutes later, his dead body was picked up on Orthodox street, on the west side of and near the track, where he had been dashed by the locomotive of the "Cincinnati express," bound south, which was running at a very rapid rate, being nine minutes late. At the moment he was struck a local train, coming in the opposite direction, was passing on the other track. A plan of the locality, put in evidence, showed that the boy at the time of the accident was upon the outer edge of the sleepers of the west line of tracks, at a point about twenty-five or thirty feet northward from Orthodox street, and about twenty to twenty-five feet from a telegraph pole against which he was thrown when struck by the engine. It thus appeared that he had not crossed the railroad at the time he was struck.

Nicholas B. Thomas, the only witness of the accident, testified as follows:—

"I live in Frankford; I saw accident when Moore's son was killed; it took place between 8 and 8½ P. M.; Cincinnati express; I was standing on Orthodox street on east side of track; side opposite his house; saw the through line, Cincinnati express, same time train leave Church street station and crossing in opposite direction; did not take much notice of the up train; I walked across and watched Cincinnati train coming running at great rate of speed; stood there and watched train running at street crossing; knowing the Cincinnati train was running at great rate of speed and would meet other at crossing, I squatted down to look under train running up and saw boy on outer end of sleepers walking; the train then was right on him; train struck him; threw him against telegraph pole, and around it he went; had to wait for last car of up train to pass, and ran across to where boy was lying on side-walk; train running at thirty-five or forty miles an hour; she was not many seconds coming from Whitehall to Orthodox street; no whistle blown; no bell rung; up train was ringing bell; not down train; no fence along line of railroad; no gates; no automatic signals; populous neighborhood; Church street station is regular Frankford station for up train; Cincinnati express did not stop there; up train reached crossing first; Cincinnati express was then one hundred yards from crossing; at time Cincinnati express reached crossing, all the up train had not passed; I was standing on upper crossing, Orthodox street, towards New York; the lad was twenty or twenty-five feet north of telegraph pole when struck; walking on outer edge of sleepers towards Orthodox street.

By the Judge: "The boy was on the outer side, on the end of sleepers, walking, at twenty to twenty-five feet north of telegraph pole; he was walking from sleeper to sleeper when I

saw him; about a second of time from my sight of him and when he was struck; he was a good height for a boy between nine and ten; he was on the side of the avenue next to his father's house.

"Question. What precise time was there between your glimpse of the boy and when he was struck? Answer. Not more than a second; it seemed as though the train was right on him; he was, of course, struck by the outer edge of the bumper.

"Telegraph pole about four or five feet from north line of Orthodox street. On account of the terrific rate of speed of the train, I looked to see if any one coming along was in danger. He could have crossed anywhere, and at right angles; he could cross there as well as anywhere else; it was the shortest route to the store."

At the close of the plaintiff's case, the judge, on motion of defendants, granted a nonsuit, which the court subsequently refused to take off. The plaintiff thereupon took this writ of error, assigning for error the refusal to take off the nonsuit, and filed, inter alia, the following specifications: (3) That it is not negligence for a child nine years of age to cross an unfenced railroad track in the middle of a street within twenty-five feet of a main thoroughfare, across which no gate has been placed, or other appliance for the protection of the people. (4) Because there was no evidence of concurrent negligence on the part of the plaintiffs, or their child. (6) The question whether there was such contributory negligence was for the jury.

*MacGregor J. Mitcheson,* for the plaintiff in error.—The boy was not a trespasser; he had a right to cross the track at or near the highway crossing, and there being no affirmative proof that he was warned not to do so, or that he did not use ordinary care, the defendants are liable.

Although the witness, N. B. Thomas, said the boy was walking from sleeper to sleeper, he also said "he could cross there as well as anywhere else; it was the shortest route to the store."

He was doubtless waiting for the up train to pass, and was caught as in a trap by the down train running at a terrible speed, behind time, and neither blowing a whistle nor ringing a bell. These facts were at least sufficient to take the case to the jury: Philadelphia & Trenton R. R. Co. *v.* Hagan, 11 Wright 244; Catawissa R. R. Co. *v.* Armstrong 2 P. F. Smith 282; Penna. R. R. Co. *v.* Kelly, 7 Cas. 372; Reeves *v.* R. R. Co., 6 Casey 454.

*Wayne MacVeagh,* for the defendant in error.—This is the case of a trespasser, to whom a railroad company owes no duty.

It is plain that the boy was either using the railroad track as a highway in walking south towards Orthodox street, instead of using Trenton avenue which ran alongside; or, if he was in the act of crossing the track, he was doing so not at a crossing, and was, moreover, actually *loitering* on the track to wait for the up train to go by. There was, therefore, no evidence of negligence by the railroad company, and the nonsuit was righty granted: Goshorn *v.* Smith 8 W. N. C. 289; Cauley *v.* Railroad Co. 11 W. N. C. 164.

Mr. Justice GREEN delivered the opinion of the Court, January 23d 1882.

The only evidence in this case, as to the position of the deceased when he was struck, was that given by the plaintiffs' witness. He testified: "The boy was on the outer side, on the end of the sleepers, walking at twenty to twenty-five feet north of telegraph pole; he was walking from sleeper to sleeper when I saw him; about a second of time from my sight of him, and when he was struck." He also said, "the lad was twenty or twenty-five feet north of telegraph pole when struck. . . . walking on outer edge of sleepers towards Orthodox street. Trees are planted in front of houses; there is a side-walk and trees outside; there is a three or three-and-a-half feet walk for passengers to Orthodox street." At another place he testified: "I squatted down to look under train running up, and saw boy on outer end of sleepers, walking; the train then was right on him; train struck him." The foregoing being the only testimony as to what the boy was doing at the moment he was struck, it was affirmatively established, and entirely undisputed, that the deceased was walking on and along the track at the time of the accident. He was not on the track at a public crossing, nor was he in the act of crossing. It is true that the railroad track at this place was laid upon the bed of a public street, and hence the right to cross it was not limited to the highway or street crossings. But the boy was walking *along* the track, and not across it, when he was struck. This he clearly had no right to do. There was an ample side-walk and roadway for all foot passengers and others desiring to proceed in the same direction with the railroad. The boy was sent on an errand to a store on Orthodox street. He had not yet reached that street, but was going toward it. Instead of walking on the foot-walk at the side of the street, or even in the roadway, until he reached Orthodox steet, and then crossing the railroad track, he appears to have diverged from both, if he was at any time upon either, and of that there is no evidence, and walked upon the cross-ties of the railway. This, at least, is all that appears in the testimony given by the plaintiffs, of which there is

[Moore *v.* Pennsylvania R. R. Co.]

no contradiction. Of course, in such circumstances, he was a trespasser, and not only put himself in peril by his rashness, but also endangered the safety of any passing trains, and the lives of passengers. We have so frequently held, that in such circumstances there can be no recovery, that it is unnecessary to quote the authorities. As the testimony was entirely undisputed, it was the duty of the court to pass upon it, which they did by directing a nonsuit. In this there was no error. The circumstance that the trespasser in this instance was a boy, ten years of age, cannot affect the application of the rule. The defendant owed him no greater duty than if he had been an adult. They are not subject to an obligation to take precautions against any class of persons who may walk on and along their tracks. In Railroad *v.* Hummell, 8 Wr. 375, the rule was applied to the case of a child seven years old. And so, also, in the latest case of the kind that has been before us, Cauley *v.* Railroad, 14 Norris 398, the rule was in no wise relaxed, although the person injured was a boy of tender years. In the first of these cases we used the following language, having reference to the facts in evidence:

"But if the use of a railroad is exclusively for its owners or those acting under them; if others have no right to be upon it; if they are wrong-doers whenever they intrude, the parties lawfully using it are under no obligations to take precautions against possible injuries to intruders upon it. Ordinary care they must be held to, but they have a right to presume and act on the presumption that those in the vicinity will not violate the laws; will not trespass upon the right of a clear track; that even children of a tender age will not be there, for though they are personally irresponsible, they cannot be upon the railroad without a culpable violation of duty by their parents or guardians. Precaution is a duty only so far as there is reason for apprehension. No one can complain of want of care in another where care is only rendered necessary by his own wrongful act."

This language is entirely appropriate to the present case, with the added force derived from the testimony of one of the plaintiffs that the deceased, his son, was a bright, intelligent boy, strong and healthy, and of rather exceptional capacity, and nearly ten years of age. If the rule against trespassers on railroad tracks is made to depend upon the intelligence and age of the trespasser it is easy to see that the law upon that subject will very soon become involved in inextricable confusion. Seeing no error in this record—

The judgment is affirmed.

TRUNKEY and STERRETT, JJ., dissented.