Emory S. Brague, by his next friend, W. M. Brague, Appellant, *v.* the Northern Central Railway Co.

*Negligence—Railroad—Trespassers—Walking on track.*

Where a person goes upon and walks on the track of a railroad voluntarily and of his own accord, without any necessity or occasion for his so doing, without permission to do so from any agent of the company, and without walking upon any beaten track, or upon any path or footwalk of any kind he is a trespasser, and if while in this position he is struck by a train operated without any wantonness on the part of the company's employees, he is not entitled to recover damages from the company. This rule is applicable to a boy seven years old.

Permission by a railroad company to the public to take water from a place upon its right of way cannot be construed as a permission to any one to walk on the tracks.

Argued March 14, 1899. Appeal, No. 372, Jan. T., 1898, by plaintiff, from order of C. P. Bradford Co., Feb. T., 1897, No. 172, refusing to take off nonsuit. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass to recover damages for personal injuries.

The facts appear by the opinion of the Supreme Court, and by the opinion of ALBRIGHT, P. J., of the 31st judicial district, specially presiding, refusing to take off nonsuit, which opinion, omitting the testimony quoted, was as follows:

On March 28, 1885, the plaintiff was injured while he was walking between the tracks of the defendant's railroad at a place called Carpenter's, by being struck by a moving locomotive with a tender attached; as a result of the injury he lost a leg; he was also injured in the back. He was then seven years, seven months and twelve days old. This action for damages

was brought to February term, 1897, and was tried in February, 1898. The court was of the opinion at the trial that plaintiff's evidence did not warrant a finding that the negligence of defendant's employees caused the injury, and that it proved that plaintiff was a trespasser; consequently a nonsuit was entered on defendant's motion. . . .

Taking the evidence at its strongest in plaintiff's favor, the facts following could be found: The time in question is March 28, 1885, when plaintiff was seven years, seven months and twelve days old; the place, Carpenter's, in the southeast corner of Tioga county. The course of defendant's railroad is north and south; it is crossed at grade by a highway wagon road; plaintiff's father's house was situated on the east side of the railroad, about thirty rods south of the crossing; on the west side of the railroad, within its right of way, about seven feet outside of the western rail of the tracks and from ten to eighteen feet south from the south side of the highway, was a flow of water out of a pipe, called in this trial the "penstock," formerly, but no longer used by the defendant; plaintiff's family and other dwellers in the neighborhood had for several years •obtained water at the penstock without objection by the company; about 6 P. M., still daylight, plaintiff was sent from his home by one of his parents with a pail to fetch water from said penstock; he crossed the railroad at said highway crossing, there being no obstructions, went south on the west side of the railroad to the penstock and filled his pail; he returned, going north on the west side of the railroad to the highway crossing, walked along it on to track; then he found a freight train, coal and flat cars, standing on the main or middle track, headed north, about four cars being still south of the crossing; in order to proceed on his way home and to get around the rear of the train, he turned south and walked between the rails, in the middle of the western track or siding, to a point three or four feet south of the penstock, from fifteen to nineteen feet south from the highway, when he was struck by a locomotive with a tender attached, backing down on the western siding from the north beyond the crossing, at the rate of six miles an hour, and was injured; his injuries resulted in the loss of a leg, and he was also injured in the back; the locomotive with the tender gave no warning by bell or whistle when it approached,

nor was any one on the part of the company looking out to see whether any one was at or on the crossing. Plaintiff says that in returning he came back north to the highway crossing. The only other witness who testified on that point, Frank Smith, says that he stepped on the track, right on the track from the penstock, and walked down the track; the freight train was moving north slowly when the locomotive and tender backed over the highway crossing; none of those operating the "pusher" engine saw the plaintiff before he was struck.

It was said by Mr. Justice STRONG in the P. & R. R. R. Co. v. Hummell, 44 Pa. 375, "It is time it should be understood in this state that the use of a railroad track, cutting or embankment is exclusive of the public everywhere, except where a way crosses it." The same doctrine has been reiterated again and again in subsequent cases. In Mulherrin v. D., L. & W. R. R. Co., 81 Pa. 366, it was said: "Except at crossings where the public have a right of way, a man who steps his foot upon a railroad track does so at his peril. The company has not only a right of way, but it is exclusive at all times and for all purposes." Many other cases might be referred to were it necessary. Justice PAXSON in Cauley v. P. & C. Ry. Co., 95 Pa. 398, said: "The company owes no duty to the father of a child of tender years trespassing upon its road nor to the child itself." In Moore v. Pa. R. R. Co., 99 Pa. 301, it was said in the course of the opinion: "The circumstance that the trespasser in this instance was a boy ten years of age cannot affect the application of the rule. The defendant owed him no greater duty than if he had been an adult." "A child between seven and eight years of age may be a trespasser, and subject to the rules of law relating to trespassers. . . . To enable a trespasser to recover for an injury he must do more than show negligence. It must appear there was wanton or intentional injury inflicted on him by the owner:" Gillespie v. McGowan, 100 Pa. 144. See also Gillis v. Pa. R. R. Co., 59 Pa. 129.

Plaintiff's counsel urge that the principles above referred to do not apply to this case. These are the reasons they advance to support their said view: " (1) The defendant had permitted six families, including the family of the plaintiff, to get water at the penstock on its premises, dangerously near the rail of their track, for twelve years. This was equivalent to a license

or permission, so that the boy, the plaintiff, only seven years of age, when at the penstock, although on the defendant's track, was not a trespasser.  Being on their road he had a right to get off.  The water was brought and allowed to run on the defendant's road in such a manner as to be an invitation to those families to get water there.  (2) The boy was injured at a crossing.  He was in the crossing and stepped out of it because the defendant was occupying it.  He was so near the crossing that the employees of the defendant could not have observed the crossing as they should have done without seeing the boy. If they did not see him they were not looking out at the crossing as they should have done.  If they did see him, they should have warned him.  (3) The boy did not come suddenly upon the track in front of the engine.  He was on the railroad when at the penstock.  He was in plain view of those on the engine from the time it came in on the side track.  Others saw the boy on the track long enough to try to call the attention of the employees on the engine to the danger of running over him. Had there been a signal of warning given upon approaching the crossing the boy, if not actually in the crossing at the time, would have been so near he must have heard it.  Had the brakeman been on the rear of the tender, looking out as he should have been when they approached that crossing and penstock, as the engineer said at the time, the boy would not have been injured.  (4) The boy was not injured on the main track where the cars ran fast and were dangerous.  A child could not be supposed to expect an engine to come on him on the side track. The employees of the company ought to have known that it was grossly dangerous for them to run their engine backward, without a lookout, down the side track where children had been getting water for twelve years.  Duty to the public required the defendant to operate its road with great care at the place where the boy was injured, for they should have known that children would not be likely to expect them with their engine running on the side track.  (5) The boy, Emory Brague, was not 'walking on the track' in the sense in which the term is used by the courts of this state.  He was crossing the track. True, to do so, he was walking down the side track to get around the freight train across the track."

If the penstock had been on, or between the tracks, said first

reason would have been valid. The question of license to take water and care for those obtaining water and going to and fro for that purpose would have to be submitted to the jury. Then there probably would have been a path to the fountain visible, but the penstock was seven feet to the west of the westernmost rail. A person getting water at it, while waiting for a vessel to fill, was in no danger of being struck by a passing train. There was no path across the track leading to it, but those getting water there passed up and down on the west side. It has not been shown that those living on the east walked across the railroad at a place other than the highway crossing. It is assumed that plaintiff's counsel do not adopt the version of Frank Smith that the plaintiff stepped at once from the penstock on the track and walked down the track, but that of the plaintiff, who testified in returning he went by way of the crossing. If the former version were accepted, plaintiff would have no case bearing discussion. As to the second reason, plaintiff's estimate of the distance from the crossing to the place he was struck is fifteen to nineteen feet; the other witnesses say the distance was greater, and it seems it was greater. He was not injured in the highway crossing. Those running the pusher were not required to look out for trespassers on the track. It is not alleged that they saw plaintiff on the track and recklessly ran him down. The argument that if the persons operating the locomotive had observed the crossing (where plaintiff was not), they could not have failed to see him to the south of the crossing (where he had no right to be), requires no answer. The defendant's duty was not to watch for trespassers on the track away from the crossing. What has just been said answers also said third reason. As to the fourth, it must be said that the defendant's rights in the use of the side track were the same as to the main track. As to the fifth reason, the cause of plaintiff's being where he had no right to be is immaterial. Defendant did not place him where he was. The traveler on a highway, who finds it blocked at a railroad grade crossing by a standing train, is not thereby justified in walking or driving on the track to go around it. If the obstruction is reasonably necessary, and not for an unreasonable length of time, no one can successfully find fault with it. In this case the obstruction existed for but a short time. If plaintiff had waited a minute the freight train

would have cleared the crossing. At most but four of the rear cars were below the crossing. All who testify on the point say that the freight train was moving slowly when the pusher passed the crossing. If the obstruction is unwarranted, the remedy is a demand for damages or a public prosecution.

Among the cases relied on by the plaintiff's counsel are the following: Kay v. Penna. R. Co., 65 Pa. 269. In that case the railroad company had permitted its siding in the city to be used by the public so that a well worn footpath was plainly visible. The person injured was a child nineteen months old. The injury was occasioned by detaching a car from an engine and sending it around a curve on a down grade, unattended by a brakeman. It was held error to enter judgment for defendant non obstante veredicto, on the alleged ground that the child was a trespasser. The case of Phila. & R. R. R. Co. v. Troutman, 11 W. N. C. 453, also cited, resembles Kay v. Penna R. Co. It was also the case of an injury to a child while crossing a railroad by a common and well worn footpath. The same may be said of Taylor v. D. & H. Canal Co., 113 Pa. 162. In R. R. Co. v. James, 1 W. N. C. 68, a verdict based on the finding that defendant was negligent (and plaintiffs not negligent) was sustained on the ground that defendant violated a city ordinance limiting the speed of trains through the city, and that the unlawful speed caused the injury. The person killed was a child eighteen months old. At the place he was injured there was no highway. The ordinance prohibited running more than five miles an hour. The father of the child, one of the plaintiff's, testified that he ran to save the child, and that if the train had been going only five miles an hour he could have saved the child. In Pa. R. R. Co. v. Lewis, 79 Pa. 33, it was held that where a train was run through a city, where people frequently crossed the tracks, at a high rate of speed, and there was no city ordinance limiting the rate, said facts required a submission of defendant's negligence to the jury. The rate of speed was found to be incompatible with public safety under the circumstances. In Hydraulic Works Co. v. Orr, 83 Pa. 332, an appliance at defendant's manufactory which caused the injury was specially dangerous. There was recklessness which partook of wantonness: Gillespie v. McGowan, 100 Pa. 144. To the same effect is Schilling v. Abernethy, 112 Pa. 437. The

principle decided cannot possibly apply here.  The authority of Hydraulic Works Co. v. Orr was explained and restricted in Gillespie v. McGowan, supra, in Rodgers v. Lees, supra, and in Pa. R. R. Co. v. Morgan, 3 W. N. C. 137.  There the question was concerning the duty of an engineer to stop his train when a child was seen on the track.  Here no such question arises. Nothing found in said cases referred to by the plaintiff's counsel establishes that the defendant owed plaintiff a duty at the time and place he was injured.  Substantially that is the only question before the court at this time.

The court is still of the opinion that the plaintiff cannot recover because the plaintiff was a trespasser, and the railroad company was not under obligation to watch for and have a care for persons at the place plaintiff was injured, and he was not seen by defendant's employees.  No cause of action could be found by a jury.

July 9, 1898, the motion to set aside the nonsuit is overruled, to which decision plaintiff excepts and prays for a bill of exceptions which is now sealed.

*Error assigned* was the order of the court.

*D. C. De Witt*, for appellant, cited Fisher v. Ry. Co., 131 Pa. 292; Kay v. R. R. Co., 65 Pa. 269; Hydraulic Works Co. v. Orr, 83 Pa. 332; Biddle v. Ry. Co., 112 Pa. 551; Taylor v. D. & H. Canal Co., 113 Pa. 162; Penna. R. Co. v. Coon, 111 Pa. 439.

*W. T. Davies*, for appellee, cited R. R. Co. v. Norton, 24 Pa. 465; American Steamship Co. v. Landreth, 102 Pa. 131; Lombard v. Christian, 124 Pa. 114; Fawcett v. Bigley, 59 Pa. 411; Hummell v. R. R. Co., 44 Pa. 375; Mulherrin v. R. R. Co., 81 Pa. 366; Cauley v. Ry. Co., 95 Pa. 398; Moore v. Pa. R. R. Co., 99 Pa. 301; Mitchell v. Phila., Wil. & B. R. R. Co., 132 Pa. 227; Moore v. Phila., Wil. & Baltimore R. R. Co., 108 Pa. 350; Flower v. Pa. R. R. Co., 69 Pa. 210; Baltimore, etc., R. R. Co. v. Schwindling, 101 Pa. 258.

Opinion by Mr. Justice Green, July 19, 1899:

The plaintiff and all his witnesses who speak upon the sub-

ject, testify that the plaintiff, at the time he was struck by the engine, was walking upon the track of the railroad in between the rails and along the track. He was not at the highway crossing, but some twenty feet away from it, according to his own testimony, and about thirty-five or forty feet distant, according to the testimony of McCaslin, one of his witnesses. The engine was moving very slowly, about five or six miles an hour. Smith, another of the plaintiff's witnesses, who was on the ground and saw the whole occurrence, testified: "I saw the accident. I was just across the track opposite the penstock. I was standing near the railroad where it goes into the main road at the crossing . . . . pusher engine was running very slow, should say not faster than five miles an hour; the boy was picked up right near the Drovlesky shanty; when he was hit he was walking down the track with his water, between the rails of the siding. I locate him when he was hit probably twelve or fifteen feet from the penstock; saw the boy at the penstock; saw him start; from the penstock he stepped down on the track, walked right on the track from the penstock—am sure about that—and walked down the track to get around this train."

Another witness for the plaintiff, McCaslin, said: "There was a freight train there at the time of the accident; it extended over the road three or four cars below the crossing; it started up—it was just nicely on a move—just pulling up—as the 'pusher' went back over the crossing. . . . At the time the plaintiff was injured the train was moving north on the main track; it required about four cars to have passed before the train would have passed the crossing; it would have taken a little more than a minute—a little longer than that." This freight train was moving on the main track over the crossing, and it was to get around this, according to Smith, that the plaintiff walked down on the siding. Had he waited this very brief space of time, a single minute, he could have crossed in perfect safety. He had gone from his father's house a few moments before to the penstock to get a pail of water. The penstock was about seven feet from the nearest rail of the track. He was asked by his own counsel: "Q. After you got the pail of water and started to go home, state what you did. A. I went back up into the public highway and started down the

siding.   Q. Why did you start down the siding?   A. Because there was a train across the crossing. . . . Q. You say you started down the siding.   What happened then?   A. I got struck with an engine."   On cross-examination he was asked: " Q. Then when you left the roadway you went on the siding? A. Yes, sir.   Q. And walked down the siding?   A. Yes, sir. Q. Going south?   A. Yes, sir.   Q. On the siding?   A. Yes, sir.   Q. Between the rails of the siding?   A. Yes, sir.   Q. About where, on the track, were you walking, as to the middle of the track or by the side?   A. In the middle between the rails."

There was other testimony to the same effect.   It was therefore firmly established by the testimony of the plaintiff and his witnesses that he went upon, and walked on, the track of the railroad voluntarily and of his own accord, without the least necessity or occasion for his so doing, without any permission to do so from any agent of the defendant, and without walking upon any beaten track, or upon any path or footwalk of any kind.   Under all our decisions he was a clear trespasser upon the track at the time and place where he was hurt, and most clearly has no right of recovery.   As far back as Railroad Co. v. Hummell, 44 Pa. 375, in 1863, this doctrine was announced and enforced in the case of a child seven years old, and in circumstances far more favorable to a recovery than in the present case, and the rule then adopted has been always adhered to and followed from that day to this.   In view of the earnest contentions of the learned counsel for the appellant in the present case it may be well enough to repeat some of the reasoning upon which the decision in Railroad Co. v. Hummell was founded. The opinion of this Court was delivered by the distinguished jurist, Mr. Justice STRONG.   In the course of the opinion he said: " But if the use of a railroad is exclusively for its owners, or those acting under them; if others have no right to be upon it; if they are wrongdoers whenever they intrude, the parties lawfully using it are under no obligations to take precautions against possible injuries to intruders upon it.   Ordinary care they must be held to, but they have a right to presume, and act on the presumption, that those in the vicinity will not violate the laws; will not trespass upon the right of a clear track; that even children of tender age will not be there, for though they are personally irresponsible they cannot be upon the rail-

road without a culpable violation of duty by their parents or guardians. Precaution is a duty only so far as there is reason for apprehension. No one can complain of want of care in another where care is only rendered necessary by his own wrongful act. It is true that what amounts to ordinary care under the circumstances is generally to be determined by the jury. Yet a jury cannot hold parties to a higher standard of care than the law requires, and they cannot find anything negligence which is less than a failure to discharge a legal duty. If the law declares, as it does, that there is no duty resting upon any person to anticipate wrongful acts in others and to take precautions against such acts, then the jury cannot say that a failure to take such precautions is a failure in duty and negligence. Such is this case. The defendants had no reason to suppose that either man, woman or child might be upon the railroad where the accident happened. They had a right to presume that no one would be on it, and to act upon the presumption. Blowing the whistle of the locomotive, or making any other signal was not a duty owed to the persons in the neighborhood, and consequently the fact that the whistle was not blown, nor a signal made, was no evidence of negligence. Were it worth while, abundant authority might be cited to show that the law does not require any one to presume that another may be negligent, much less to presume that another may be an active wrongdoer. . . . There is as perfect a duty to guard against accidental injury to a night intruder into one's bedchamber as there is to look out for trespassers upon a railroad where the public has no right to be.

"And the rule must be the same whether the railroad is in the vicinage of many or few inhabitants. In the one case as in the other, going upon it is unlawful, and therefore need not be expected."

The whole of this reasoning is applicable to the present case and controls it. In Mulherrin v. Railroad Co., 81 Pa. 366, we held that where a person goes on a track he cannot recover from the company except for wanton injury, although the negligence of the company's agent contributed to the result. In the opinion we said: "Except at crossings where the public have a right of way a man who steps his foot upon a railroad track does so at his peril. The company have not only a right of way, but

such right is exclusive at all times and for all purposes. This is necessary not only for the proper protection of the company's rights, but also for the safety of the traveling public." In Moore v. Pa. R. R. Co., 99 Pa. 301, we said : " The circumstance that the trespasser in this instance was a boy ten years of age cannot affect the application of the rule. The defendant owed him no greater duty than if he had been an adult. They are not subject to an obligation to take precautions against any class of persons who may walk on and along their tracks. In Railroad Co. v. Hummell, 44 Pa. 375, the rule was applied to the case of a child seven years old. And so also in the latest case of the kind that has been before us, Cauley v. Railway Co., 95 Pa. 398, the rule was in no wise relaxed although the person injured was a boy of tender years."

We have applied the rule in many other cases of children, but it is not necessary to cite them, as there is no dispute about the law. The appellant however claims that there are several considerations which take this case out of the ordinary rule. These are all fully considered and answered in the opinion of the learned court below on the motion to take off the nonsuit, and we do not consider them of sufficient force to make any extended answer to them now. We concur entirely with the court below and for the reasons stated in the opinion in the decision refusing to take off the nonsuit. The permission to the neighbors to take water from the penstock cannot possibly be regarded as a permission to any one to walk on the tracks. The boy was not at or on the crossing when he was struck, and it was not the duty of the men on the train to look out for trespassers. Whether the boy was on the main track or side track made no difference in the application of the rule. It is a mistake to say the boy was crossing the track. He and all his witnesses said he was walking along and on the track. The assignment of error is dismissed.

Judgment affirmed.