# Leithold v. Philadelphia & Reading Railway Company, Appellant.

*Negligence—Railroads—Infant.*

1. A railroad company cannot be held liable for the death of a child seven years old by the fact that the child went from a street through a gap or opening between the fences of two coal yards, sixty-five feet long, and eight feet wide on to defendant's right of way, and was struck by a train 300 feet from the opening of the gap on the right of way, where there is no evidence to show that the railroad company owned, controlled or had any relations with the opening or gap, or that there was any defined path or crossing over the tracks in any direction from the opening of the gap. In such a case it is immaterial that grown persons and children had for a long period been in the habit of going through the gap and crossing, or walking along plaintiff's tracks.

2. The use of a railroad track, cutting or embankment, except at lawful crossings is exclusive for the company and its employees. Except at crossings where the public have a right of way a man who steps his foot upon a railroad track does so at his peril. The company has not only a right of way, but such right is exclusive at all times and for all purposes. The circumstance that the trespasser is a child of tender years cannot affect the application of the rule. The defendant owes him no greater duty than if he had been an adult. They are not subject to an obligation to take precautions against any class of persons who may walk on and along their tracks. The only duty which it owes to a trespasser is not to injure him wantonly or intentionally.

Argued Dec. 16, 1910.  Appeal, No. 200, Oct. T., 1910, by defendant, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1897, No. 855, on verdict for plaintiff in case of Max Leithold and Ida Leithold v. Philadelphia & Reading Railway Company.  Before Rice, P. J., Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ. Reversed.

Trespass to recover damages for the death of a child seven years old.  Before Sulzberger, J.

Verdict for plaintiff for $2,000, upon which judgment was entered for $1,000, all above that amount having been remitted.

*Error assigned* was in refusing binding instructions for defendant.

*Wm. Clarke Mason*, for appellant.—In all decided cases where the court has held that a duty arose to one who would ordinarily be a trespasser by reason of the fact that the person injured was injured while upon a permissive crossing, the decision has been based upon the fact that the evidence showed the use at the time of the accident of a well-defined, notorious and beaten crossing over the defendant's tracks: Phila. & Reading R. R. Co. v. Troutman, 11 W. N. C. 453; Taylor v. Canal Co., 113 Pa. 162; Specht v. R. R. Co., 24 W. N. C. 317; Welsh v. R. R. Co., 181 Pa. 461; Penna. R. R. Co. v. Mooney, 126 Pa. 244; Grant v. R. R. Co., 215 Pa. 265; Moore v. R. R. Co., 99 Pa. 301; Brague v. Ry. Co., 192 Pa. 242.

*Louis P. Schaefer*, for appellees.—There were circumstances from which a child between seven and eight years of age might naturally and reasonably infer an invitation to enter upon the railroad and a permission to cross it, and that, therefore, there was imposed upon the defendant the duty of extra care: Taylor v. Canal Co., 113 Pa. 162; Millum v. Coal Co., 225 Pa. 214; Kay v. R. R. Co., 65

Pa. 269; Cambria Iron Co. v. Tomb, 48 Pa. 387; Henderson v. Refining Co., 219 Pa. 384.

OPINION BY PORTER, J., July 13, 1911:

The plaintiffs brought this action to recover damages for the alleged negligent killing of their daughter, who was between seven and eight years of age, by a shifting engine of the defendant company, upon a siding leading from its tracks into a coal yard. The statement filed by the plaintiffs averred that the tracks of the defendant company in that section of the city of Philadelphia bounded by Lehigh avenue, Somerset street, Kensington avenue and Frankford avenue were located upon private property of the defendant company; that on the side nearest Lehigh avenue, to which the tracks were parallel, the property between the right of way and that avenue was entirely inclosed by buildings and fences, with the exception of a passageway about eight feet wide, extending from the avenue to the right of way of the defendant company; that this "passageway thus open and unobstructed invited the public and particularly children, from a school near by, to use the same as a short cut across the tracks of defendant company, and the said passageway was thus used by the public and particularly children for a long period of time prior to the injury;" that it became the duty of the defendant company to entirely close said passageway to the public or provide ample means of protection for those who used it; that the defendant company negligently permitted the said passageway to remain open and with full knowledge of the fact to be used and "failed to provide any means of protection which by reason of said usage it became its duty to provide;" that their child lawfully entered upon the roadbed of the defendant company by means of the passageway described and proceeded to cross the tracks in the direction of Jasper street, a thoroughfare running parallel with Kensington avenue and between Kensington and Frankford avenues; and that an engine, the property of the defendant com-

pany, was so carelessly and negligently operated by said company that it struck and so severely injured said child that she shortly afterwards died. The defendant company, at the trial, presented a point requesting binding instructions in its favor, which the court below refused, and there having been a verdict in favor of the plaintiffs, the defendant company moved the court for judgment in its favor non obstante veredicto, which motion the court overruled, and these rulings are here assigned for error by the defendant company.

The uncontradicted evidence established, and it is upon all hands conceded, that there is a public crossing of the tracks of the defendant company at Frankford avenue, which is planked or paved between the rails and that there is a like public crossing at Kensington avenue, which is 1,233 feet to the westward. Between these points there is no public crossing. Lehigh avenue is south of and runs parallel with the tracks of the defendant company. The entire frontage on the north side of Lehigh avenue is occupied by coal yards, in possession of and operated by private parties, which extend north from that avenue to the line of the right of way of the defendant company. This entire north frontage of Lehigh avenue is inclosed by buildings or fences, with the exception of a space of about eight feet, which was referred to by the witnesses, respectively, as a "passage," "gap," "opening," "thoroughfare," "alley," and "break in the fence," and is the "passageway" referred to in the statement filed by plaintiffs. There was a coal yard—called the Bickley yard—at the corner of Frankford and Lehigh avenues, the fence inclosing which extended back along the north side of Lehigh avenue a distance of 292 feet, from which point the rear fence of that yard extended north, perpendicular to the avenue, sixty-five feet, where it joined the fence inclosing the north side of that yard, next the right of way of the defendant company. There was a space eight feet wide, running north and south, between the fence of the Bickley coal yard and the fence

of the coal yard located next to the westward, the east side of which latter was also inclosed by a fence running north and south. This strip of ground eight feet wide and extending back the entire depth of the coal yards, sixty-five feet, was not inclosed and it was possible to pass over it from the north side of Lehigh avenue to the right of way of the defendant company. There was no evidence from which a jury should have been permitted to find that the defendant company owned or had any control whatever over either this strip of ground or the coal yards upon either side; nor was there any evidence that the strip of ground was used for any purpose by the employees of the defendant or those who had business relations with the company. The only evidence in the case as to the manner in which the property on the north side of the railroad, across from this passageway, was used was to the effect that it was occupied by coal yards for the entire distance between Frankford and Kensington avenues, and there was no evidence from which a jury should have been permitted to infer that any public highway reached the right of way of the railroad company upon that side. The evidence entirely failed to disclose anything with regard to the ownership of this narrow strip of ground, which the appellant calls a passageway, and there is nothing to indicate any purpose for its having been permitted to remain uninclosed. It was not paved or in any manner improved as a passageway, and one of the witnesses produced by the plaintiffs testified that there were indications that a fence had once extended across the mouth of the opening and that it had been broken down. The plaintiffs produced evidence tending to establish that persons, adults and children, frequently passed through this open space between the coal yards, thus reaching the right of way of the defendant company, and having reached such right of way they proceeded in any way they chose, to take "short cuts" across the tracks or along them, to reach any point they desired between Kensington avenue on the west and Frankford avenue on the east. The plaintiffs made no at-

tempt to establish that there was at any certain point a well defined and beaten path by which persons were accustomed to cross the tracks at any point between Frankford avenue and Kensington avenue. The defendant company maintained and operated, at this locality, five main tracks and two sidings, one upon the southern portion of the right of way, for the purpose of reaching the coal yards there located, and the other, for a like purpose, upon the northern portion of the right of way. There was no evidence from which a jury should have been permitted to find that any well defined path crossed any one of these tracks or sidings at any given point. The utmost that can be claimed for the evidence produced by plaintiffs is that it indicated that many people passed through the uninclosed eight foot space leading north from Lehigh avenue and, having traversed the sixty-five foot length of that passage, they roamed wherever they felt inclined, but pursued no well defined path. The contention of the appellee is that the failure of the defendant company to close this passage constituted an invitation to the public to enter upon the right of way and cross the tracks or walk upon them longitudinally at will. The difficulty with this position is that the plaintiffs absolutely failed to produce evidence which indicated that the defendant company was responsible for or had control of this alleged passageway.

There was a serious question under the evidence whether the child who was killed had reached the right of way of the railway company through the passageway in question, but the jury having passed upon that question we must accept it as settled. The undisputed fact is that the child was killed on the siding leading into Becker's coal yard, which connects with the siding upon the south side of all the main tracks of the company, and that the point of the accident was about 300 feet west of the passageway in question. If, therefore, she did obtain access to the south side of the right of way of the defendant company through the passageway from Lehigh avenue,

she must have then turned westward and walked along the south side of the right of way for a distance of 300 feet and, having crossed another siding before she reached Becker's, she there started to cross the tracks. She had safely passed Becker's siding when a companion warned her not to proceed as a train from Kensington avenue, to the westward, was approaching; she stepped back on to Becker's siding and was struck by the shifting engine coming down out of the Becker coal yard, where it had been placing some cars. The only negligence in the operation of the locomotive which it was attempted to show was the failure to give warning of its approach, by ringing of bell, blowing of whistle or in any other manner. There is nothing in the evidence to indicate, nor do the plaintiffs contend, that the injury to the child was willfully or wantonly inflicted. The finding of the jury determined that no warning of the approach of the locomotive was given and the question presented, under the evidence, is whether the servants of the defendant company were negligent in failing to give warning of the approach of the locomotive to the point at which the accident occurred. Was it the duty of the employees of the defendant to give warning that the engine was about to pass over that point in the track, in the absence of any knowledge upon their part that the child was then crossing? The decision of this question must turn upon whether the child had the lawful right to be where she was.

There being no public highway crossing the tracks at the place in question, we must consider the sufficiency of the evidence produced to warrant a finding that there was, at the point in question, a well defined crossing of the tracks used by the public with the acquiescence of the defendant company, of which the employees of the latter were bound to take notice and give warning to persons using such crossing of the approach of trains or engines. The evidence necessary to establish the existence of a permissive crossing of the tracks of a railroad must definitely locate the crossing at a certain point. The rule with

regard to this subject was thus stated in Taylor v. Delaware and Hudson Canal Co., 113 Pa. 162: "The principle clearly settled by the foregoing, and many other cases that might be cited, is, that when a railroad company has for years, without objection, permitted the public to cross its tracks at a certain point not in itself a public crossing, it owes the duty of reasonable care towards those using the crossing." When a permissive crossing really exists there ought to be no difficulty in producing evidence as to its exact location, else how can the railroad company or its employees be presumed to know when and where they ought to give warning of the approach of a train to such crossing? These considerations led the Supreme Court to hold that where the evidence disclosed that a party injured entered upon the track of a railroad company, "without any permission to do so from any agent of the defendant, and without walking upon any beaten track, or upon any path or footwalk of any kind," the railway company owed him no duty. "Under all our decisions he was a clear trespasser upon the track at the time and place where he was hurt, and most clearly has no right of recovery:" Brague v. Ry. Co., 192 Pa. 250. The evidence produced by the plaintiffs in the present case failed to establish the existence of a permissive crossing of the tracks at any point between Frankford avenue and Kensington avenue. All that it did establish was that it was possible for persons, passing over the uninclosed strip of ground, to reach the right of way of the defendant company and trespass upon it to an extent which was without limitation. If the contention of the appellee could be sustained, then a railroad company must erect impassable barriers along every foot of its right of way or, in case it fails to do so, all who obtain access to its tracks have a right to walk along them from one end of the line to the other. The evidence wholly failed to establish the existence of a permissive crossing at the point where the child of the plaintiffs was injured. The learned judge of the court below rightly

said to the jury, "There is no evidence of a crossing at or about that point." Having thus eliminated from the case any question of the existence of a permissive crossing at or about the point where the child was injured, he submitted the case to the jury upon another ground, saying, "There is legal evidence from which you can conclude that as regards children of that tender age—not as regards grown persons, but as regards children of that tender age—there is that which children of such tender age might naturally construe as permission to come through that eight foot alley and cross the railroad to any of the streets on the north side that they might want to reach; and when so construed, if you find that there was such an invitation and that the little girl came from there and did not come from the coal yard, such a childish construction by a child, however incorrect it is, when it has become common usage (and that it became so, some of the witnesses have testified) imposes upon the railroad company the duty of extra care at that point; they must travel with heed." The jury was thus permitted to infer an invitation, or what this child construed to be an invitation, by the defendant company to enter upon its tracks from the single fact that the defendant company had failed to take measures to prevent access to its right of way from the uninclosed strip of ground between that right of way and Lehigh avenue. The learned judge was of opinion that, under the evidence, a grown person who entered upon the right of way from the eight foot passageway was a trespasser, but permitted the jury to find that a child thus entering might lawfully do so.

The use of a railroad track, cutting, or embankment, except at lawful crossings is exclusively for the company and its employees. Except at crossings where the public have a right of way a man who steps his foot upon a railroad track does so at his peril. The company has not only a right of way, but such right is exclusive at all times and for all purposes. The circumstance that the trespasser is a child of tender years cannot affect the appli-

cation of the rule. The defendant owes him no greater duty than if he had been an adult. They are not subject to an obligation to take precautions against any class of persons who may walk on and along their tracks. The only duty which it owes to a trespasser is not to injure him wantonly or intentionally: Phila. & Reading R. R. Co. v. Hummell, 44 Pa. 375; Cauley v. Ry. Co., 95 Pa. 398; Moore v. Penna. R. R. Co., 99 Pa. 301; Baltimore & Ohio R. R. Co. v. Schwindling, 101 Pa. 258; Welsh v. R. R. Co., 181 Pa. 461; Brague v. Ry. Co., 192 Pa. 250. The defendant company had not used any of its property in this locality for the purpose of receiving freight from or delivering it to the public, nor had it devoted its property to any purpose which implied an invitation to the public to enter upon its property, in that locality, for any purpose, and the authorities of which Kay v. Penna. R. R. Co., 65 Pa. 269, is an example, have no application to the question here presented. The defendant company used its property in this locality solely for the passage of trains, and it had the right not only to demand, but reason to expect a clear track. The company did not owe to the public, adults or children, the duty of excludimg them from access to its right of way, so long as it did not conduct its business in such a manner as to invite the public to enter upon its premises for the purposes of its business. The mere fact that the company did not so fence its right of way as to exclude children from its tracks did not involve a breach of duty which would render it liable in an action for damages. The language of Mr. Chief Justice FELL, in Thompson v. Baltimore & Ohio R. R. Co., 218 Pa. 449, is here peculiarly applicable: "The plaintiff's youth relieves him of the charge of contributory negligence but it does not give rise to an imputation of negligence on the part of the defendant. He was where he had no right to be, on the property of the defendant, which it was using in a lawful manner for a lawful purpose in the conduct of its business. It owed him the duty not to injure him intentionally but it was under no duty actively to take care of

him either by keeping him out of the yard or of protecting him after he had entered it from his own acts or the acts of others who, like him, had entered without permission. There was no negligence unless there was a breach of duty. There was no breach of duty owing to an adult." And it was in that case held that a different standard of duty upon the part of the railroad company did not exist, when the party injured was a child. It may here be observed that the defendant company in the present case was not maintaining a turntable or any other device likely to attract children in play, upon these premises, and the case is, therefore, free from any of the difficulties which were suggested in the dissenting opinion by Mr. Justice MESTREZAT, in the case last cited. The doctrine of the case above cited was reasserted in Walsh v. Pittsburg Rys. Co., 221 Pa. 463: "The plaintiff was on the private property of the defendant, where she had no right to be. Its employees were not bound actively to care for her by keeping her off the lot or by protecting her after she had entered it from injury that might result from the condition of the property. The standard of duty in such a case is the same whether the person injured is an adult or a child." In view of these authorities we cannot consider the question here presented an open one. The defendant company was not bound to so fence its track as to exclude trespassers therefrom. The court below fell into error in permitting the jury to pass upon the question, of whether the failure of the defendant company to close the eight foot passage, which rendered access to its right of way possible, might be construed by children as an invitation to enter upon the track. The specifications of error are sustained.

The judgment is reversed and judgment is now entered in favor of the defendant non obstante veredicto.