# Pennsylvania Railroad Company *v.* Guthrie, Appellant.

*Railroads—Right of way—Deeds—Possession.*

A railroad company cannot acquire title by adverse possession nor can a claimant against such company, but where it is uncertain as to how much land was embraced in the original grant of the right of way, the existence of a visible demarcation between the lines of the railroad company's property and the abutting owner will be prima facie evidence that the respective titles were separated by said line and that the line was acquiesced in by the railroad and the abutting property holder.

Where the terms of a grant of a right of way are general and indefinite, its location and use by the grantee acquiesced in by the grantor will have the same effect as if it had been fully described by the terms of the grant.

Where a railroad company is entitled to the possession of an embankment within its right of way, it is entitled to the exclusive possession at all times and for all purposes.

Argued Nov. 20, 1916. Appeal, No. 2, Oct. T., 1916, by defendant, from judgment of C. P. Chester Co., April T., 1915, No. 47, on verdict for plaintiff in case of Pennsylvania Railroad Company v. R. Smith Guthrie. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Trespass for encroaching on a railroad right of way. Before GAWTHROP, J.

The opinion of the Superior Court states the case.

Verdict and judgment for plaintiff for one dollar. Defendant appealed.

*Error assigned* was in refusing judgment for defendant n. o. v.

*George B. Johnson,* for appellant.

*A. M. Holding,* for appellee.

OPINION BY TREXLER, J., May 7, 1917:

Defendant is the owner of a coal yard lying along the main line of the Pennsylvania Railroad Co. in the Borough of Parkesburg. The question in this case is whether he has the right to occupy with his coal bins or pockets a part of the slope or embankment of the railroad. On March 18, 1859, Robert Parks the predecessor in title of both of the parties to this suit conveyed to the railroad company a lot adjoining defendant's property, and in the deed in addition to the lot granted "the right to widen the embankment of the said Pennsylvania Railroad on the north side thereof for a distance of 495 feet, extending eastward from the above described lot to the crossing of a public road or street sufficient to give a width of fourteen feet on the top of said embankment outside the north rail of the main track of the Pennsylvania Railroad for the purpose of laying down a third track or siding." Guthrie the present owner obtained title to his lot on March 30, 1907. His grantor was Moses Ross who obtained title on August 3, 1891. The court below directed a verdict in favor of the plaintiff.

The undisputed evidence in the case shows that the bank is now in the same condition it was thirty years ago. There was evidence of a raise of the track of about eighteen inches but the increase of the height was not sufficient to affect the position of the coal bins in relation to the slope, in fact it appears clearly by the testimony that when the coal bins were erected they were within the limits of the slope and according to defendant's story they were about five feet away from the top of the embankment. If the company is entitled to the possession of the embankment, it is entitled to the exclusive possession at all times and for all purposes: P. & R. R. R. Co. v. Hummell, 44 Pa. 375; Pittsburgh, Ft. Wayne, Etc., Railway v. Peet, 152 Pa. 488; Kaseman v. Sunbury Boro., 197 Pa. 162; Leithold v. Philadelphia & R. Ry. Co., 47 Pa. Superior Ct. 137, and Gillespie v. Buffalo, Etc., R. R. Co., 226 Pa. 31.

The only defense that defendant offers is that in 1876, long before he acquired title, there was a change of grade in the railroad and although there is no definite testimony as to what extent the embankment at the coal yard was affected, defendant claims that the embankment which existed before said change did not extend to the place occupied by the coal bins. When Moses Ross, the defendant's predecessor in title acquired title, the embankment as we stated before was substantially in the same condition it is now. It was in possession of the railroad company. The bins were erected about 1900 and were admittedly within the limits of the embankment as it then existed. The slope is about eighteen or nineteen feet long and the coal bins are about five feet from the top. At the time the bins were constructed, even assuming that there was a change of grade in 1876, the embankment had been there for twenty-four years. It is true that a railroad company cannot acquire title by adverse possession nor can a claimant against such company but where it is uncertain as to how much land was embraced in the original grant of the right of way, the existence of a visible demarcation between the line of the railroad company's property and the abutting owner would be prima facie evidence that the respective titles were separated by said line and that the line was acquiesced in by the railroad and the abutting property holder. Whilst the language of the grant from Parks was definite as to its terms, the extent of the embankment varied and, depended of course upon the height of the grade of the railroad and what that was does not appear in the deed. Where the terms of a grant of a right of way are general and indefinite, its location and use by the grantee acquiesced in by the grantor will have the same effect as if it had been fully described by the terms of the grant: Warner v. Railroad Co., (Ohio) Am. & Eng. R. R. Cases 417; P. & R. R. R. Co. v. Obert, 109 Pa. 193.

Under the undisputed facts in the case we think that

the railroad company presumably had the right of possession to the embankment as defined on the ground for thirty-nine years prior to suit and there is no testimony in the case which would overcome this prima facie right of possession.

Judgment affirmed.