JOHN P. JOHNSON *vs.* J. M. GUFFEY PETROLEUM COMPANY. SAME *vs.* BOSTON AND MAINE RAILROAD.

Essex.    December 12, 1907. — February 26, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Negligence,* Railroad in highway.

At the trial of an action of tort against a railroad company for personal injuries received by the plaintiff through being run over by a train of the defendant, it appeared that, at about three o'clock on a morning when there was no moon, a box freight car was being pushed by an engine at the rate of three miles an hour on a spur track owned by a private person which was upon the side of a street, on the right hand as the car proceeded, that a foot path or sidewalk lay to the right of the track, that the street was in a business district of a city near a wharf where there were but few dwelling houses and where hardly any traveller would pass after nightfall.    The car and engine were the property of the defendant and at the forward end of the car as it proceeded were two employees of the defendant, each with a lantern, who were keeping a lookout on the track in front.    The plaintiff was lying unconscious just outside of the right hand rail with his body at right angles with the rail and only his arm extended across it. Eight feet back from that rail was a line of fence and buildings.    The train was

being preceded down the track, as was customary, by an employee of the person who owned the track for the purpose of warning travellers of its approach. The defendant's employees did not see the plaintiff until it was too late to prevent running over his arm. *Held*, that there was no evidence for the jury on the question of the defendant's negligence.

At the trial of an action of tort against one who maintained a spur track for use in connection with his mercantile business, running from the main line of a railroad upon the side of a public street through a business district containing few dwelling houses and leading to wharves, to recover for personal injuries alleged to have been received by the plaintiff by reason of negligence on the part of an employee of the defendant whose duty it was to see that there were no obstructions upon the track and to precede cars and engines running thereon to warn travellers in the street, either on foot or in vehicles, so that no injury should be caused to them, it appeared that the plaintiff was run over by a box freight car which was being pushed down the track by an engine at the rate of three miles an hour at three o'clock on a morning when there was no moon, that, when run over, the plaintiff was lying unconscious just outside of the rail at the right as the train proceeded, with his body at right angles with and only his arm extended across the rail, that the travelled part of the street was wholly at the left of the track excepting a narrow footpath on the right, about eight feet beyond which was a line of fence and buildings, that the defendant's employee within half an hour had passed over the track with a lantern, walking between the rails, and that at that time the plaintiff was not there, that, as the train proceeded, the defendant's employee preceded it, keeping about one hundred feet in front, with his lantern, but walking in the street to the left of the track, and that he passed by the point where, on the other side of the track, the plaintiff lay with his arm across the rail, and did not see him, and the train, following, ran over the plaintiff's arm. *Held*, that, considering the conduct of the defendant's employee with reference to the danger which he had reason to apprehend and the kind of observation that he would be expected to make in the performance of his duty, there was no evidence from which the jury would be warranted in finding that either he or the defendant was negligent.

TWO ACTIONS OF TORT for personal injuries alleged to have been received by the plaintiff by reason of negligence of employees of both defendants whereby he was run over by a freight car propelled by the railroad company on a track of the petroleum company running along Water Street in Beverly. Writs in the Superior Court for the county of Essex dated November 21, 1904.

There was a trial before *Wait*, J. The facts are stated in the opinion. At the close of the evidence by direction of the presiding judge a verdict was returned for the defendant in each case, and the plaintiff excepted.

The cases were submitted on briefs.

*A. P. White & G. C. Richards*, for the plaintiff.

*H. F. Hurlburt & D. E. Hall*, for the defendants.

KNOWLTON, C. J.  The first of these two defendants has its place of business on Water Street in Beverly.  It obtained the privilege of laying a steam railroad track from this place, through the street, to the main line of the Boston and Maine Railroad, running from Salem to Newburyport.  It was admitted at the trial that this track was lawfully laid, that trains were lawfully operated upon it, and that the defendants were lawfully on the street at the time of the accident hereinafter referred to.  The Petroleum Company hired one Buckle to look after the condition of the track, and, when it was to be used in the night time, he was accustomed to pass over it with a lantern, to the junction with the main line, and then to precede the engine and cars on the way back, for the purpose of warning persons on the street. Water Street runs nearly east and west along the water front, from the head of Beverly bridge until it enters Lothrop Street, which leads easterly along the North Shore.  The street at the place of the accident is thirty-one or thirty-two feet wide, and around the curve to the east it is narrower.  The railroad track is laid near the south side of the street.  On each side there is a narrow path or walk, of dirt, which is on a level with the track, and there are no gutters.  The travel with teams is on the northerly side of the track.  The southerly rail of the track is eight feet from the nearest face of a pole, standing at the side of the street near where the plaintiff was injured, and about the same distance from the general line of the fence and the buildings on that side of the street.  The track between the rails is four feet eight and one half inches in width.  There are wharves and docks not far from the place of the accident, and, except for a few old dwelling houses, the structures on the street are used for business purposes.  The distance from the junction to the works of the Petroleum Company is nearly sixteen hundred feet.

At about a quarter before three o'clock in the morning of September 7, 1904, six servants of the railroad company went from Salem to Beverly, and hitched their locomotive to a freight box car, and started to push it over this track to the petroleum works.  Buckle was preceding them with a lantern, about one hundred feet in advance of the car.  The conductor, McCormick, and the brakeman Morancy were standing on the front of the car, the former near the corner, holding by the ladder, and

the latter on the draw bar, and each was carrying a lantern and looking out upon the track in front.   The car and engine were going at the rate of about three miles in an hour, when suddenly the two men in front discovered a dark object on the ground just south of the track, about three feet ahead of the car.   The conductor made an outcry to stop the car at once.   The car was stopped quickly, but the forward wheels passed over one hand and one arm of the plaintiff, who was lying on the ground south of the track, his feet pointing southward and his hands extending over the southerly rail.

The first question is whether there was any evidence that the plaintiff was in the exercise of due care.   It appeared that he was a native of Sweden, about thirty-four years of age, and that he had then lived in this country nearly two years.   His business was that of a carpenter and house builder.   He testified that, on Tuesday, the day before the accident, he worked at his trade in Peabody, and at half past four o'clock returned on his bicycle to the Cabot House in Beverly, where he boarded.   In the evening he went to Salem, to the house of the Scandinavian Sick Benefit Society, of which he was a member.   There was a political meeting there which ended about ten o'clock, and after that he remained, with others, until one o'clock, when he left the house alone, some of his companions remaining longer.   It appeared that, after the political meeting, there was a half barrel of beer there, from which members were drinking, that there was no charge to those who drank; that some of the party were smoking, some were singing and some were talking.   He testified that he drank only two glasses of beer.   He accounted for his presence near the track by saying that, when he went over the bridge to Beverly on his way home, he "noticed, in regard to the weather, it was kind of an indication it was going to be windy," that he had left his sail boat at anchor in Beverly Harbor after using it on the last Sunday, but the anchor rope was short, and he left it not quite ship shape; that he had a row boat tied up at McAdams' wharf, and, instead of going home, he went down Water Street to the wharf, which is just east of the place of the accident, and got this boat, and went out to the sail boat and gave it more rope, then went back with the dory and tied it up in its place, and went upon Water Street and walked

towards Cabot Street. He said that he remembered being right in front of the brick building which is on Foster's wharf, and remembered nothing more until after the accident. He testified that he went to his sail boat on the Monday before, which was Labor Day, but did nothing to make it more secure, and had done nothing about it between the Sunday when he left it there and this morning on which he was hurt. He also testified that, three times since he came to America, he had had a fainting spell, but that each of these times was in the house of one Frieburg, with whom he was boarding; that he had a few fainting spells before he left his native country; that when he was fourteen years old a ladder broke, and he fell and hurt his head, and that his first fainting spell occurred very soon after that.

The plaintiff contended that the jury might find from this evidence that he was taken with a fainting spell, of which he was entirely unconscious, and that, while in this condition, he fell down near the track, without any lack of care on his part, and was injured solely through the negligence of the defendants.

If we assume in favor of the plaintiff, without deciding, that his testimony, if believed implicitly in every part, would warrant the jury in finding that he was in the exercise of due care, we come to the question whether there was evidence of negligence on the part of either of the defendants. Considering first the servants of the defendant railroad company, there is nothing to show that it was negligent to push the car over this track. There was no turntable near the place from which the car was taken. The car was being moved very slowly, and the conductor and a brakeman were on the forward end of it, at the level of the draw bar, looking out to see that the track was clear. There was no moon, nor any light on the street in that vicinity. A dark object lying on the dark ground, with buildings and the fence not far away, would not be visible at any great distance. The plaintiff in his brief says: " The evidence is clear that, stationed as they were, ' keeping a lookout ahead,' ' watching right ahead,' it was impossible for them to see a man lying partly across one of the tracks until actually upon him, . . . so near as to be unable to stop the slowly moving train until after one truck had run over him." Then, too, they had a right to rely to some extent upon Buckle, who was going on before

them as a watchman, with his lantern. We think it plain that there was no evidence of negligence on the part of this defendant's servants. There was no evidence, and it was not contended, that Buckle was a servant of the railroad company. The verdict was rightly ordered for the defendant railroad company.

The question whether there was any evidence of negligence on the part of Buckle, the servant of the Petroleum Company, is more difficult. It is to be remembered first that he had passed over the track, walking between the rails, carrying his lantern and a shovel, about half an hour before the accident, on his way from the works to the junction. He carried his shovel to clean off any obstructions that might be on the track, and he testified that his examination was such as to make him certain that there was no one on the ground in dangerous proximity to the track at that time. Moreover, at the trial the plaintiff's counsel stated their claim to be that the plaintiff was not then there, but came there afterwards.

It was not negligent for Buckle, while walking before the train with his lantern, in the night time, to walk just to the left of the track rather than upon it. This was only a reasonable provision for his own safety, in reference to the possibility of his falling accidentally, and it did not interfere with his making such an observation of the track as seemed reasonably necessary under the circumstances. Besides, his particular and important duty could best be performed while walking there. All travel by teams was on that side of the tracks. The chief danger to be guarded against was the frightening of horses from meeting a locomotive engine and a train of cars in a very narrow street. It was to be supposed that pedestrians would exercise reasonable care for their own safety. The evidence shows no lack of due care in the manner in which Buckle was performing his duty.

The only ground on which an argument for the plaintiff can be founded is the fact that Buckle did not see the plaintiff. The question thus presented is whether his failure to see the plaintiff justifies an inference, from that alone, that he was not in the exercise of reasonable care. The principle invoked by the plaintiff is that which is involved in the doctrine of *res ipsa loquitur*. To test the question all the circumstances must be considered. In the first place the photographs and the other

evidence show that this was a street in which one would hardly expect to find any travellers after nightfall. There were but few dwelling houses upon it. It was not on a main line of travel, but was a very short street, turning out from the main thoroughfare, and running around by the wharves, and up into the principal street again. The time of the accident was in that part of the night when hardly anybody is abroad, even on the great thoroughfares in a region of residences. Then Buckle had been over the track and had inspected it with his lantern only a short time before the car came along. In going back there was only a chance that some one had come into that unfrequented street between two and three o'clock in the morning, and had fallen helpless on the track, in the short time that had elapsed after his inspection of it. This chance was so exceedingly small as not to call for a minute inspection of every part of the ground, in reference to that possibility alone. The principal purpose of Buckle's employment was to look out for travellers, either in vehicles or on foot, so that their horses might not be frightened or they themselves injured by a locomotive engine in a narrow street. Travellers by night, as well as by day, are expected to be well above the ground, and not lying upon it. His means of observation were only such as his lantern would afford him in a night when there was no moon. In the proper performance of his duty he would be expected to keep his eye at an angle of elevation which would best discover moving objects, not those lying on the ground.

But so far as the track itself was concerned, there was hardly anything to be seen if he looked over the whole space throughout every yard of his course. There was nothing but the plaintiff's hands extending over the southerly rail. His body and legs were lying on the dark ground outside, at right angles to the track. When we consider the dim, indistinct vision of the ground which one gets while walking with a lantern, and the small area of a common lantern's illumination of the ground as it is ordinarily carried, we do not think that Buckle's failure to notice the plaintiff's hands and arm upon the rail, if we assume that they were there when he passed by, indicates negligence on his part. The burden is upon the plaintiff to introduce evidence of negligence.

Buckle's conduct is to be considered with reference to the dangers which he had reason to apprehend, and the kind of observation that he would be expected to make in the performance of his duty. His principal duty, after having inspected the tracks a short time before, was to be alert for the discovery of moving objects, rather than to examine every yard of the ground to see if he could find any one lying outside of the track, with a hand or a foot extending over upon it.

The facts presented resemble those in *Kupiec* v. *Warren, Brookfield & Spencer Street Railway,* 196 Mass. 463, and the principles involved are the same as in that case. We are of opinion that they call for the same kind of a decision.

*Exceptions overruled.*