GEORGE CHATTERTON *vs.* EASTERN MASSACHUSETTS STREET RAILWAY COMPANY.

Bristol.    October 25, 1926. — November 24, 1926.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Negligence*, Street railway.

Upon evidence tending to show merely that a street car, running in a grayish light between twilight and dark at the rate of from twenty to twenty-five miles per hour down hill on a track at the side and off the travelled part of a country road where there was no sidewalk, ran into a man, not a traveller on the way, who was stooping toward a bank which sloped upward from a ditch beside the track, having a foot and a part of his body where the car could strike it, that the motorman did not see the man and that he did not sound a bell or whistle, a finding that the motorman was negligent is not warranted.

TORT for personal injuries. Writ dated December 8, 1922.

In the Superior Court, the action was tried before *Brown*, J. Material evidence is stated in the opinion.  At the close of the evidence, the defendant moved that a verdict be ordered in its favor.  The motion was denied.  There was a verdict for the plaintiff in the sum of $3,400.  The defendant alleged exceptions.

*A. E. Seagrave*, for the defendant.

*D. R. Radovsky*, (*H. W. Radovsky* with him,) for the plaintiff.

CROSBY, J.  This is an action of tort to recover for personal injuries received by the plaintiff when struck by a car of the defendant.  The accident occurred on Riverside Avenue, a public way in Somerset.  The road at this place is on a grade sloping to the north, the top of the grade being six hundred feet or more to the south.  The defendant's tracks were located on the westerly side of the road and the ties extended about two feet beyond the rails on each side. A ditch for carrying off surface water from the tracks and from adjoining premises on the west side of the road was situated west of the outer edge of the ties.  These premises were reached by driveways which crossed the tracks.  There was no sidewalk on the west side of the road, and west of the ditch was a bank sloping upward to four or five houses, and to a house basement which the plaintiff had recently constructed.  The travelled part of the way was easterly of the tracks.

The plaintiff testified, in substance, that he had laid a hose pipe from the basement to the ditch for the purpose of draining water, and used a small hand pump to start the water running; that he placed the pump between two of the ties where water had washed out the dirt, and at the time of the accident, the water having begun to flow by gravity, he was attempting to disconnect the pump from the hose; that he was stooping over with one foot against the rail and the other between the ties and was facing the bank across the ditch; that a part of his body extended over the rail and while in that position he was struck by a north bound car.  He further testified that he had a clear view of cars approaching from both directions and from

the south he could see and be seen for a distance of from five hundred to seven hundred feet; that electric cars ran each way about every half hour and generally ran fast at this point; that except for electric cars there were no vehicles that he had to look out for; that he turned his head to the north and to the south every two or three seconds and looked in both directions about a second before he was struck; that the accident occurred on September 1, 1922, at about a quarter to eight o'clock in the evening; that his daughter-in-law stood in the centre of the track to look out for him.

The daughter-in-law testified that at the time of the accident she stood between the rails while the plaintiff was at work; that she was there to watch for approaching cars and that he was watching at the same time; that as she turned to look to the south she heard a whistle from a car coming from that direction which was so close to her that "she just had time to jump and when she jumped she screamed and the plaintiff was hit; that the car went about five telegraph poles after hitting the plaintiff." She further testified that there were bushes on the bank which were close to the ditch in some places; that the last time she saw the plaintiff he was turned toward the bushes (shown in a photograph offered in evidence) and that the bushes were about three feet from the rail.

The plaintiff's son testified that at the time of the accident "it was just about on the turn after the glow of the sun . . . kind of a grayish light; it was not dark, it was light."

The evidence was undisputed that the car was going about twenty to twenty-five miles an hour. The motorman and other witnesses who were riding in the front vestibule testified that when the car was about twenty or twenty-five feet from the place of the accident they saw a dark object in the ditch and that the brakes were applied and the car stopped, according to the testimony of the motorman, in three car lengths, and of other witnesses, in two.

Without deciding that the question of the plaintiff's care was for the jury, the question is whether there was any evidence of negligence of the defendant's motorman.

The speed of the car was not excessive. It was running

down a long grade on a track outside the travelled part of the highway. It was in the country, and so far as the evidence shows there were only four or five houses in that vicinity and they were located on the bank west of the track. There was no sidewalk on that side of the track, and there were no other vehicles travelling on the tracks or crossing them. The plaintiff was standing, with one foot between the ties, facing the west, at a place not used for travel except by the defendant's cars, nor where ordinarily a motorman would expect any one to be.

The plaintiff was not a traveller upon the highway, nor was he on that part of it where the motorman reasonably might anticipate some one would be near enough to the path of the car to be struck. Although it could have been found that at the time of the accident it was not dark and that the motorman might have seen the plaintiff as he stood in a stooping position between the ties with a portion of his body over the track, yet we are of opinion that his failure to see him, and his failure in the circumstances to sound the whistle at that time and place were not evidence of negligence.

As was said by Chief Justice Knowlton in *Johnson* v. *J. M. Guffey Petroleum Co.* 197 Mass. 302, at page 308, "Travellers by night, as well as by day, are expected to be well above the ground, and not lying upon it." So in the case at bar, a person having occasion to go upon a street railway track or so near it as to be within the path of cars is expected to be in a position where he readily can be seen by the operators of cars. The attention of the motorman in the proper operation of his car would naturally be directed toward the track ahead of him rather than toward the place where the plaintiff was standing between the ties in a stooping position.

We are constrained to hold under all the circumstances that the motorman could have had no reasonable expectation that any one would be where the plaintiff stood when struck, and his failure to observe him in time to stop his car was not negligence. The case at bar cannot be distinguished in principle from *Kupiec* v. *Warren, Brookfield & Spencer Street Railway*, 196 Mass. 463, *Johnson* v. *J. M.*

*Guffey Petroleum Co., supra,* and *Bohanon* v. *Middlesex & Boston Street Railway,* 237 Mass. 27.

The exceptions must be sustained and in accordance with G. L. c. 231, § 122, judgment may be entered for the defendant.

*So ordered.*