## Izzi *v.* Philadelphia Transportation Company, Appellant.

Argued April 29, 1963.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

 reargument refused December 16, 1963.

*Harry A. Takiff,* with him *Martin Greitzer,* and *Takiff and Bolger,* for appellant.

*Joseph M. Leib,* with him *Rubin and Leib,* for appellees.

OPINION BY MR. CHIEF JUSTICE BELL, November 12, 1963:

These appeals arise out of actions of trespass brought by appellees for personal injuries resulting from an unusual occurrence involving a so-called trackless trolley and an automobile, which occurred June 17, 1958. The trolley was an instrumentality of ap-

pellant, Philadelphia Transportation Company (hereinafter sometimes referred to as P.T.C.), and the automobile was a ½ ton Ford pickup truck which was owned and operated by appellee, Neil Douthart. Appellee, Louis Izzi, was a passenger in the truck. Initially, Izzi sued P.T.C.; P.T.C. joined Douthart as additional defendant. Douthart also sued P.T.C. By stipulation of counsel the cases were consolidated for trial. Although the exact verdict which was rendered is challenged, we are satisfied that the jury returned two verdicts against P.T.C., one of $58,423.75 in favor of Izzi, and one of $1,000 in favor of Douthart. In each case, P.T.C.'s motion for judgment non obstante veredicto, and, alternatively, for a new trial, was denied; and from the judgment entered on each verdict P.T.C. took an appeal.

We believe it will clarify the issues and this Opinion if we state at the beginning (1) that there was no collision between the trolley and the truck, and (2) that the trial Judge submitted the cases to the jury on the twofold basis of (a) negligence, and (b) the exclusive control doctrine.

In disposing of defendant's motion for judgment non obstante veredicto, we shall of course consider the evidence in the light most favorable to the verdict winners, giving them the benefit of all reasonable inferences therefrom: *Zilka v. Sanctis Construction Co.,* 409 Pa. 396, 186 A. 2d 897; *Bohner v. Eastern Express, Inc.,* 405 Pa. 463, 175 A. 2d 864.

It is equally well established that "The grant or refusal of a new trial by the lower Court will not be reversed by this Court in the absence of a clear abuse of discretion or an error of law which controlled the outcome of the case: *F. C. Haab Co., Inc. v. Peltz Street Terminals, Inc.,* 407 Pa. 276, 278, 180 A. 2d 35; *Bohner v. Eastern Express, Inc.,* 405 Pa., supra; *Segriff v. Johnston,* 402 Pa. 109, 114, 166 A. 2d 496": *Menyo v. Sphar,* 409 Pa. 223, 225, 186 A. 2d 9.

## Facts

Considering the facts in the light most favorable to the verdict winners, the facts may be thus summarized.

A trackless trolley operated by P.T.C. was proceeding south on Oxford Avenue at a speed of between 10 and 15 miles per hour. Approximately thirty-five feet behind the trolley, Douthart's pickup truck was also proceeding south on Oxford Avenue at a speed of between 10 and 25 miles per hour. According to Douthart, at a point between Kenwyn Street and Dyre Street, both of the poles atop the trackless trolley became disconnected from the overhead wires (power lines) with which such poles are normally in contact and began to swing wildly back and forth and up and down. Douthart immediately started to pull his truck to the left so it would not be right behind the trackless trolley. He testified that shortly thereafter "I felt a jar, a crash, and I saw a big light of fire in the reflection of the mirror coming in the side of the door." Douthart immediately "jammed on" his brakes, and as a result both he and his passenger Izzi were thrown violently about in the truck, and both received bodily injuries.

The "big light of fire" referred to by Douthart resulted from the fact that one of the swinging poles on the top of the trackless trolley came into contact with and severed a guy wire—an overhead wire which stretched between poles on either side of the street and extended from curb to curb. The severed guy wire whiplashed across the power lines, causing a short circuit or an arcing which produced the flash. The "crash" referred to by Douthart was the noise made when the small porcelain knob of an insulator which had been attached to the guy wire fell and apparently struck the left-hand rear side of Douthart's truck.

The operator of the trackless trolley did not become aware of the fact that one or more of the poles was dis-

connected from the overhead wire or wires until several seconds later when one of the poles severed a guy wire. There was no warning device inside the trolley which would inform the operator of the poles' position but the operator testified that he could tell whether the pole was off "by the noise of the poles."* The trackless trolley went approximately 100 feet from the time the poles became disconnected until one of them hit the guy wire, and it then went another 80 feet before it was stopped. The Douthart truck stopped at a point to the left of the trackless trolley, with the rear of the truck a few feet to the rear and to the left of the trolley. As above mentioned, there was no collision or contact whatever between the trolley and the truck.

There are two types or kinds of trolleys in Philadelphia—the standard or old trolley car and the modern or trackless trolley. For many decades, streetcars have been in use on the streets of Philadelphia. The standard or old type of trolley had an overhead pole which, by means of a small grooved metal wheel on the end of the pole, made contact with an overhead electric wire. Such overhead wire was usually extended down the center of a street. With this standard type of trolley it was by no means an uncommon event for the metal wheel on the pole to become disconnected from the overhead power line and for the pole thereafter to strike the overhead power line. When that happened, it usually produced an electric flash.

A trackless trolley is in some respects, such as mechanism and power, different from the standard trolley. The trackless trolley has two overhead wires.

---

* The operator of the trackless trolley testified that if his night lights were on when the pole went off the wire, he would know it because the light would go off; similarly, if he was applying power, his power would fail. In the present case the accident happened in daytime; his lights were not on and his power was not being applied because he was coasting on a slight grade.

Two poles are mounted on the roof of a trackless trolley, both of which make contact with the overhead wires by means of what are called "shoes." The shoes allow the poles to swing laterally, thereby permitting a trackless trolley to be operated along the sides of a street instead of (solely) along the center line of the street, as is the case with the standard trolley.

## Exclusive Control

Plaintiff contended and the Court below held that under the aforesaid facts and circumstances the doctrine of exclusive control applied, and the question of P.T.C.'s negligence was therefore and thereunder a question for the jury. This was error. Neither res ipsa loquitur nor the doctrine of exclusive control applies: *Miller v. Montgomery*, 397 Pa. 94, 152 A. 2d 757; *Seburn v. Luzerne & Carbon Co. M. T. Co.*, 394 Pa. 577, 580, 148 A. 2d 534; *Nebel v. Burrelli*, 352 Pa. 70, 74-75, 41 A. 2d 873; *Killen v. Pennsylvania R.R. Co.*, 376 Pa. 320, 328, 102 A. 2d 140; *Miller v. Pennsylvania R.R. Co.*, 368 Pa. 507, 511, 84 A. 2d 200; *Schickel v. Yellow Cab Company*, 369 Pa. 356, 85 A. 2d 138; *Lanning v. Pittsburg Rys. Co.*, 229 Pa. 575, 79 Atl. 136; *Davies v. McDowell National Bank*, 407 Pa. 209, 180 A. 2d 21; *Stewart v. Morow*, 403 Pa. 459, 170 A. 2d 338; *Kepner v. Harrisburg Traction Company*, 183 Pa. 24, 38 Atl. 416; *Benson v. Philadelphia Rapid Transit Company*, 248 Pa. 302, 93 Atl. 1009; *Clark v. Philadelphia Rapid Transit Company*, 241 Pa. 437, 88 Atl. 683; *Zercher v. Philadelphia Rapid Transit Company*, 50 Pa. Superior Ct. 324.

The doctrine of exclusive control appears to be widely misunderstood. *Exclusive control alone* is not sufficient to invoke or apply the doctrine. For example, an automobile which strikes a pedestrian on the street is in the exclusive control of the driver, yet the

principles of negligence and not that of exclusive control apply.* If a pedestrian, or a person on, or stepping on or off, a trolley car is injured, the trolley car is in the exclusive control of its operating company, yet the principles of negligence and not that of exclusive control apply.** If a passenger is injured while walking on a railroad track or while getting on or off a train, or if a person is injured by a falling object in a home, the train is in the exclusive control of its operating company and the home is in the exclusive possession of the owner, yet the principles of negligence and not that of exclusive control apply.*** If an airplane crashes killing a passenger, the plane was in the exclusive control of the pilot but the exclusive control doctrine does not apply.**** Finally, and factually directly in point and controlling, when a pole has become dislodged from a standard trolley and with or without an electric flash injures a person, the trolley was in the exclusive control of the operating company, yet (1) the plaintiff must prove by a fair preponderance of the evidence that (a) defendant was negligent in a specific manner and (b) its negligence was the proximate cause of the accident and (2) the doctrines of exclusive control and res ipsa loquitur do not apply: Cases supra.

---

* Even when an automobile is driven off the road on a curve and into a creek and its driver is killed and the plaintiff passenger is seriously injured, the test is negligence and the doctrine of exclusive control does not apply. *Miller v. Montgomery*, 397 Pa., supra.

** *Staller v. Philadelphia Rapid Transit Company*, 339 Pa. 100, 14 A. 2d 289; *Cutler v. Philadelphia Rapid Transit Company*, 319 Pa. 351, 179 Atl. 434.

*** *Dobrowolski v. Pennsylvania Railroad Company*, 319 Pa. 235, 178 Atl. 488; *Philadelphia and Reading Railroad Company v. Hummell*, 44 Pa. 375; *Stewart v. Morow*, 403 Pa., supra; cf. also *Haddon v. Lotito*, 399 Pa. 521, 161 A. 2d 160; *Novak v. Neff*, 399 Pa. 193, 159 A. 2d 707; *Davies v. McDowell National Bank*, 407 Pa., supra.

**** *Rennekamp v. Blair*, 375 Pa. 620, 101 A. 2d 669.

Before we discuss infra these cases which support the above mentioned propositions, we deem it wise to reiterate that the doctrine of exclusive control, which has often been termed a dangerous doctrine, is in the last analysis applied only under very unusual conditions and only because of necessity. It negates long established rules of evidence which have become rules of substantive law. It is well established that the doctrine raises *an inference* of negligence and shifts to the defendant the burden of going forward with the evidence, and thus takes all such cases to the jury. However, it is rarely ever recognized that in the last analysis, it also practically and in reality shifts to the defendant the burden of proving due (i.e., reasonable) care and thereby exculpating itself from the inference of negligence. The doctrine should be applied only where *all* of the following elements are present: (a) where the thing which caused the accident is under the exclusive control of or was made or manufactured by the defendant; *and* (b) the accident or injury would ordinarily not happen if the defendant exercised due care, or made or manufactured the article with due care; *and* (c) where the evidence of the cause of the injury or accident is not equally available to both parties, but is exclusively accessible to and within the possession of the defendant; *and* (d) the accident itself is very unusual or exceptional and the likelihood of harm to plaintiff or one of his class could reasonably have been foreseen and prevented by the exercise of due care; *and* (e) the general principles of negligence have not theretofore been applied to such facts.

In *Lanning v. Pittsburg Railways Company,* 229 Pa., supra, this Court held that the rule of res ipsa loquitur did not apply and entered a judgment for defendant non obstante veredicto. In its opinion the Court said (pp. 576, 577, 578) : ". . . a trolley wire of the defendant company parted at the corner of Pike

and Main streets, in the borough of Houston, and Mary Martha Lanning, one of the plaintiffs, who was crossing from Pike over to Main street, was either knocked down by one end of the broken wires or fell in an effort to avoid it [and the resulting flash]. Her fall resulted in the injuries for which damages are claimed in this action brought by her and her husband. The averment in their statement charging the defendant with negligence is that it did not have its trolley and guy wires properly adjusted and fastened, and said wires, on account of improper adjusting and negligent fastening, broke and fell to the ground . . . .

"Whatever may be the rule in other jurisdictions as to the presumption of negligence whenever one traveling on the street of a municipality is injured by an appliance of a company using electricity upon or over the street, our cases recognize no such presumption. With us the rule res ipsa loquitur does not apply in such a case, and the burden was upon the appellees to show more than the mere breaking of the wire: Kepner v. Traction Co., 183 Pa. 24. The burden was upon them to show that the breaking was due to some negligence of the company, and, having charged in their statement the specific negligence which resulted in the breaking, it was upon them to establish that negligence on the trial. Until street railway companies are made insurers of the safety of persons traveling over the streets and highways of the commonwealth against injury from any appliance used in their transportation systems, one injured, as this plaintiff was, must prove more than the mere fact of the breaking of the trolley wire. . . .

". . . Did the negligence of the defendant company cause it to break? If this did not appear, there was no liability upon the defendant. . . ."

In *Zercher v. Philadelphia Rapid Transit Company*, 50 Pa. Superior Ct., supra, the judgment of the lower

Court was reversed and judgment was entered in favor of defendant non obstante veredicto. In that case, plaintiff was standing on a street corner and was injured by the fall of a trolley pole from a passing street-car. She heard a noise—obviously the breaking of the pole—and the pole fell upon and injured her. Plaintiff alleged negligence in operation and control of defendant's streetcar, and the pole must have been defective because it fell and a proper inspection would have disclosed its defect. The Superior Court rejected (a) the doctrine of res ipsa loquitur and (b) the exclusive control doctrine and held that the burden of proof was upon the plaintiff to establish that some specific negligence of defendant caused the breaking of the pole and her subsequent injury.

In *Kepner v. Harrisburg Traction Company*, 183 Pa., supra, the case is well summarized in the syllabus (p. 24) : "In an action against a street railway company to recover damages for personal injuries, no presumption of negligence arises against the street railway company from the mere fact that plaintiff's horse became frightened by the breaking of a trolley wire, and that in consequence plaintiff was injured by being thrown or jumping from his wagon, when neither the wire nor any sparks emitted from it touched the horse, wagon or the plaintiff. On the contrary the burden is on the plaintiff to establish negligence on the part of defendant by affirmative proof."

In *Benson v. Philadelphia Rapid Transit Company*, 248 Pa., supra, this Court sustained a judgment of compulsory nonsuit and said (p. 303) : "The plaintiff, a pedestrian upon the street, was injured by the fall of a trolley pole, which was drawn from its socket upon the roof of a car, which was moving around a curve. It appears that the accident resulted from the fact that the trolley wheel slipped from the overhead wire, and caught in a crotch of the supporting wires, which lifted

the pole from its socket, so that it afterwards fell to the ground, striking the plaintiff. There was nothing in the evidence which tended to show that anything was wrong with the apparatus, or that the pole was not adjusted in its place in the ordinary and proper way."

The doctrine of exclusive control has never been applied to a case such as the instant one,[*] and obviously it does not meet *all* of the above mentioned tests. Even more important, a trackless trolley car is not legally different from a standard trolley car, and *a myriad cases* involving standard trolleys have held that where injuries resulted from facts and circumstances such as or similar to those here present, (1) the company was not an insurer and (2) a plaintiff, in order to recover, must prove by a fair preponderance of the evidence that the company was negligent and that such negligence was the proximate cause of the plaintiff's injuries.

The trial Judge, as above mentioned, submitted the case to the jury on the basis of (a) negligence, and (b) the exclusive control doctrine. Since the exclusive control doctrine is inapplicable, this was basic error which necessitates a new trial, unless defendant is entitled to a judgment non obstante veredicto. We must therefore determine whether under the above mentioned facts and circumstances, together with all reasonable inferences therefrom, plaintiff has established by a fair preponderance of the evidence that P.T.C. was negligent and that its negligence was the proximate cause of the accident.

---

[*] In the following cases the doctrine of exclusive control has been properly applied: *Shafer v. Lacock, Hawthorn & Co.*, 168 Pa. 497, 504, 32 Atl. 44; *Durning v. Hyman*, 286 Pa. 376, 133 Atl. 568; *Skeen v. Stanley*, 362 Pa. 174, 66 A. 2d 774; *Loch v. Confair*, 372 Pa. 212, 93 A. 2d 451; *Mack v. Reading Co.*, 377 Pa. 135, 103 A. 2d 749; *Commonwealth v. Montour Transport Co.*, 365 Pa. 72, 73 A. 2d 659; *Dillon v. Scull Co.*, 164 Pa. Superior Ct. 365, 64 A. 2d 525.

While the evidence of negligence is very slight, we are of the opinion that it was sufficient to take the case to the jury, and that the instant case is distinguishable from the cases hereinabove cited.

Judgment reversed and a new trial granted.

Mr. Justice EAGEN concurs in the result.

Mr. Justice BENJAMIN R. JONES dissents and would enter judgment n.o.v.