Silverman *v.* Oil City Glass Bottle Company et al., Appellants.

Argued November 14, 1963. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Drayton Heard,* with him *Heard & Heard,* for appellants.

*Raymond G. Hasley,* with him *Harold R. Schmidt, Alfred S. Pelaez,* and *Rose, Houston, Cooper and Schmidt,* for appellee.

OPINION BY FLOOD, J., April 14, 1964:

The plaintiff purchased 2700 dozen 16 oz. "Liberty Jars" from the Samuel Mallinger Co., an independent broker, who in turn acquired them through defendant Knox Associates, Inc., the sales agent for defendant Oil City Glass Bottle Co., by whom they were manufactured. They were shipped directly from Oil City to the plaintiff and used by him in processing pickle products. He claims severe damage to his product as the result of breakage and leakage during the process of packing, cooking and storing the pickles.

The plaintiff first sued in assumpsit, alleging the breach of an express warranty of fitness for his particular purposes and obtained a verdict against Knox and Oil City. However, on appeal the Supreme Court

affirmed a judgment n.o.v. in favor of the defendants because there was no evidence of the alleged warranty. *Silverman v. Samuel Mallinger Co.*, 375 Pa. 422, 100 A. 2d 715 (1953). The plaintiff then brought this action in trespass alleging negligent manufacture of the jars and relying upon the doctrine of exclusive control to take his case to the jury.

The exclusive control doctrine applies when the circumstances of the accident are such as to give rise to the inference that the injury resulted from the negligence of the defendant-manufacturer (or of the dealer if he is also a defendant) who can "readily explain the equipment and method employed by it" in making the articles involved, while the plaintiff is not normally in a position to prove the cause of the accident. *Loch v. Confair*, 372 Pa. 212, 93 A. 2d 451 (1953). See also *Izzi v. P. T. C.*, 412 Pa. 559, 195 A. 2d 784 (1963).

The doctrine of exclusive control is not applicable where the plaintiff's evidence does not exclude the inference that he himself, or a third party, may have caused the injury. *Braccia v. Coca-Cola Bottling Co.*, 398 Pa. 386, 157 A. 2d 747 (1960). Unfortunately for this plaintiff, he has not negated a causal connection between his processing operation and the damage.

In the processing operation, new jars were unpacked, spices were inserted and the jars were taken by conveyor belt to a section where they were packed with washed green pickles, filled with brine and capped. The jars were then placed in cooking retorts where they were subjected to temperatures up to 180° for a period of twenty minutes in order to finish and pasteurize the pickles. They were subsequently allowed to cool to room temperature, placed in cardboard cartons and taken to a warehouse for storage. When placed in the cartons the jars were inserted so as to determine whether the lids were on straight and detect leakage.

While on the conveyor line, jars of any manufacturer would normally bump against one another causing some breakage. As gherkins were being packed in the Oil City jars, the packers, in order to get a completely full jar, hit the jars against a table to make the pack settle. Pressure on the jars was also exerted during the final capping process when an automatic machine would spin the cap and the operator would press down on the jars to aid in the tightening. In the cooking process, jars would occasionally hit each other, "stirring around", and break.

It is clear that under the testimony of the plaintiff's own witnesses there were many possible events in this process which might cause breakage of properly manufactured jars. His claim is in reality for breakage greater than normal.

Jerome Silverman, the plaintiff's general production manager at the time of the occurrence, testified that either immediately or not later than one-half hour after starting to use the Oil City jars, he became aware of unusual breakage, the volume of which was at least twenty times as great as in processing operations using other manufacturers' bottles and greater than had occurred with other glass during an entire week. Notwithstanding this, the plaintiff continued to pack, cook, invert and store the entire shipment of 1350 cases during the day of their arrival and into the afternoon of the next day.

No evidence was produced by the plaintiff to show that the jars purchased from Oil City should have withstood the processing better than they did or that ordinary jars would withstand the plaintiff's packing, heating, capping and inverting better than Oil City's 16 oz. "Liberty Jar". While Jerome Silverman testified that the breakage was "at least 20 times greater than with other manufacturers", he mentioned only jars with trade names and did not say whether or not

they were specially adapted for plaintiff's purposes. More important, he could not tell how the breakage came about.

There was no evidence that the defendants knew the purpose for which the plaintiff intended to use the bottles. In light of the judgment for the defendants in the assumpsit case, it is res judicata that there was no express warranty of fitness for the plaintiff's purposes.[1] There is no evidence that "ordinary jars" would not have broken under the "thermal shock" to which plaintiff's processing subjected them, that the defendant knew plaintiff's intended use of the jars, or that the jars in question were not fit for ordinary purposes. On the contrary, the plaintiff himself testified: "But for the processing of pickles I imagine they had to use a little different type jar, they had to manufacture it a little differently than they would any ordinary jar because it would have a thermal shock when it went into the hot water." This statement by the plaintiff, when taken with the lack of any evidence eliminating his own processing as a legal cause of his harm, renders the *Loch v. Confair* doctrine inapplicable. There was no inference of negligent manufacture under the doctrine of exclusive control or otherwise. The defendants were not, therefore, called upon to exculpate themselves.

The plaintiff's reliance upon *Dillon v. William S. Scull Co.,* 164 Pa. Superior Ct. 365, 64 A. 2d 525 (1949), is misplaced. There the court said: "There is no evidence nor any explanation, reasonable or even fanciful, of how the mere handling of the jar by the employes of the immediate vendor could have con-

---

[1] In view of our decision that no negligence has been proved we need not decide whether the judgment for the defendant in the assumpsit case bars this action in trespass on a theory of negligence. But as to this see *Gardiner v. Phila. Gas Works,* 413 Pa. 415, 419, 197 A. 2d 612, 614 (1964).

tributed in any wise to the explosion. . . . Here the integrated package was handled and used only in the manner which the defendant had intended and foreseen." There is no evidence that the defendants in the action before us had intended or foreseen the manner in which the plaintiff would handle or use the jars.

The plaintiff further argues that the defendants, as manufacturers of jars used "in the industry . . . most certainly should have foreseen the intended use." This goes far beyond *Loch v. Confair*, supra, and is, in effect, an attempt to hold the defendants on an implied warranty of fitness for the plaintiff's purposes. This is precluded by the judgment for the defendants in the assumpsit case.

The plaintiff also points to testimony that even though jars were handled "in the normal fashion", the breakage was "greatly in excess of that normally occurring". The generality of these statements falls before his specific testimony that the jars used for his processing had to be manufactured "a little differently than they would any ordinary jar because it would have a thermal shock when it went into the hot water". Under these circumstances, use "in the normal fashion" or "normally occurring" breakage does not furnish a proper criterion for liability.

Testimony by an Oil City employe to the effect that defects occasionally occurred in that firm's jars does not help the plaintiff. He has not shown that such defects caused his injury, which he must do to establish liability when his failure to eliminate his own conduct as a cause of his injury precludes application of the doctrine of exclusive control.

The judgment is reversed and is entered for the defendants n.o.v.