## Zitkus v. Southeastern Pennsylvania Transportation Authority

*Joseph D. Shein,* for plaintiff.
*Edward Greer,* for defendant.
*Murray C. Goldman,* for additional defendant.

McDEVITT, J., October 27, 1972.—This case was tried before the Hon. John J. McDevitt, 3rd, and a jury on November 24th through December 1st, 1971. The jury found in favor of plaintiff Helen Zitkus $15,000 and plaintiff Albert Zitkus, her husband, $7,500. The court directed a verdict for defendant, City of Philadelphia. Defendant SEPTA filed a motion for new trial as to plaintiffs, only, based upon:

1. Error by the court in submitting the case to the jury on the theory of a defect in the appliance of transportation.

2. Excessiveness of the verdict.

### FACTS

On April 29, 1965, plaintiff, Helen Zitkus, was a fare-paying passenger on one of defendant's Route C buses. As plaintiff was departing through the center doors at the west side of City Hall and South Penn Square, the bus "jerked" forward causing her to lose her balance and fall into the street. She sustained a sprained ankle and a bruised leg, which later resulted in thrombophlebitis that has since become permanent and chronic. A witness, John T. Grigsby, 3rd, Esq., saw some passengers get off. As plaintiff was getting off the bus it "jerked" forward and plaintiff fell to the street. He ran over to assist plaintiff. Grigsby noticed that her right ankle was swollen and took her to

Hahnemann Hospital in his automobile which had been parked at the curb.

## DISCUSSION

1. *Was there error by the court in submitting the case to the jury on the theory of a defect in the appliance of transportation?*

The court submitted the case to the jury on two theories of liability. (This was in accord with the requests for charge and the jury argument of plaintiffs' counsel.)

1. Negligence or carelessness in the operation of the bus, in that plaintiff was not given sufficient time to alight (the bus "jerked" or started ahead as she was attempting to alight.)

2. That one of the appliances of transportation, the operation of the door in this instance, was defective.

Since no special interrogatories were submitted to the jury on the issue of liability, the court is unable to determine upon what theory or theories the jury based defendant's liability. If the case was submitted to the jury on an inapplicable theory of liability, this would be basic error which would necessitate a new trial: Izzi v. Philadelphia Transportation Co., 412 Pa. 559, 569 (1963). The complaint filed in this case does not allege that the door operating or door control mechanism was defective or inoperative. Evidence produced by plaintiffs relates only to negligent operation of the bus by the driver. An argument can be made and was advanced by counsel for plaintiffs that the safety control on the door was inoperative, otherwise the driver could not have moved the bus with the door open. A shop man employed by defendant described this mechanism in defendant's case. If the control was operative, the driver could not have moved the bus while the door was open. This was offered by the defense and whether this effort to defend was inept

or not, plaintiff could not interject as an independent basis of recovery defective appliance of transportation which he had not alleged.

A review of plaintiff's evidence discloses that as plaintiff was leaving from the center door the bus "moved a little bit" or ". . . it jerked and I lost my balance." ". . . the lady was getting out of the bus, and then when she was getting out of the bus, the bus jerked, the lady fell."

Defendant introduced the testimony of its driver and its maintenance superintendent that the bus did not move, nor could it move because of safety devices which prevented movement of the bus with the doors open.

A presumption may arise that an accident resulting in injury to a passenger was caused by the negligence of the carrier and that the carrier is called upon to disprove such negligence as stated in Orms v. Traction Bus Co., 300 Pa. 474, 476 (1930), explained and cited most recently in Pedretti v. Pittsburgh Railways Co., 417 Pa. 581, 584 (1965): " 'Prima facie, where a passenger on a common carrier is injured, without fault of his own, by the carrier, its employees or anything connected with the appliances of transportation, a legal presumption of negligence is cast on the carrier which it must disprove: [citing authorities] But, . . . it is not every injured passenger who can recover damages in an action against a common carrier transporting him at the time he sustained his injury. "No presumption of negligence arises merely from the fact that the plaintiff was injured while a passenger." ' "

The rule is limited by the manner in which the passenger received his injury. To throw this burden, that of proving such injury was in no way the result of its negligence, upon the carrier, it must first be shown that the injury complained of resulted from

the breaking of machinery, collision, derailment of cars, or something improper or unsafe in the conduct of the business or in the appliances of transportation. However, counsel for plaintiffs cannot use this general statement of the responsibility of the carrier for negligence to a passenger where, as here, neither the specific or general allegations of negligence stated a cause of action based upon defective appliance of transportation.

The complaint alleged:

"3. On or about the 29th day of April, 1965, plaintiff did become a fare-paying passenger on a bus of defendant and was in the process of alighting therefrom at Broad and Market Streets, Philadelphia, Pennsylvania, when the driver did negligently and carelessly start the bus before plaintiff was clear of the same causing her to fall and sustain the injuries hereinafter set out.

"4. The negligence of the defendant by its duly authorized agent, servant, workman, and employee, acting within the course and scope of his employment, consisted of the following:

"(a) Failing to see that plaintiff was clear of the doors before starting the bus;

"(b) Permitting plaintiff to alight in a dangerous place;

"(c) Starting the bus prematurely;

"(d) Violating the duty owed to a fare-paying passenger."

Nowhere in the complaint was it alleged that there was a defective appliance. The sole basis for liability was the negligence of the bus operator.

Counsel for plaintiffs submitted requests for charge and argued to the jury that there were two contentions. First, that there was negligence in operating the bus in that Mrs. Zitkus was not given sufficient time to alight safely, i.e., the bus jerked or started ahead as

she was attempting to alight. Second, that one of the appliances of transportation, the operation of the center door, in this instance, was defective, which, in itself, may raise the presumption of negligence on the part of SEPTA.

In discussing the requests for charge the day before the jury arguments, the court called the attention of SEPTA'S counsel to plaintiffs' points for charge numbers 4 and 5 concerning the issue of a defect in the appliance of transportation. The court's initial reaction was:

"First of all, is there an allegation in the complaint which would cover defective appliance?" There was no response by plaintiffs' counsel.

Defense counsel said:

"What is he trying to do get a res ipsa or exclusive control? Is that what these two are directed to? I would think that . . . that res ipsa or exclusive control would apply only where he proves a defect in the appliance, but there is no proof of defect in the appliance here."

The court's response was, "Well take a look at them." The trial judge did not rule on plaintiffs' requests at that time.

Next morning, prior to the jury arguments, the court granted the City of Philadelphia's request for a directed verdict, discussed the plaintiffs' requests and ruled on them. Defendant objected to requests 4 and 5 and had an exception. Unfortunately, SEPTA did not take the position there was a variance and the trial judge did not check the complaint. At the conclusion of the charge, defense counsel stated: "There is no allegation as to defective appliance, and there is no proof in this case, Your Honor, as to any defect in the appliance."

Plaintiffs' counsel was told that if his requests for charge have misled the court, that will have to be his

responsibility as the court could not go back and restate or recharge the jury on the liability issues in the case. Counsel insisted his position was correct. The trial judge had checked the complaint at that point and believed that he had committed a serious error which was not reversible at that point. The question was thereupon reserved for post-trial review.

Unfortunately for plaintiffs, the over-zealousness of counsel for plaintiffs requires a new trial. The jury had sufficient evidence of negligent operation of the bus based upon the testimony of wife-plaintiff and her witnesses. The defense offered by defendant was futile insofar as it related to the door safety control, because its employe conceded that it would only be effective if it were in operating condition. No inspection was made of the mechanism when the bus returned to the garage. It is self-evident that if the driver did move the bus with the door open, the safety mechanism was defective.

The variance here was fatal in that defendant was not put on notice of a significant theory in plaintiffs' case. A theory which placed upon defendant a heavy burden, the presumption of negligence, which, based on the pleadings, it was not required nor prepared to overcome. Defense testimony cannot have the effect of amending the complaint filed years before trial and after the statute of limitations had run. This is a new cause of action.

" 'Despite the increasing informality of modern practice, there has been no substantial departure from the salutary rule that pleadings and proof must conform sufficiently to enable a defendant to meet at trial the same cause of action disclosed by the complaint . . . "The rule against a variance between allegata and probata is not arbitrary, but is based upon

the sound reason that a defendant should not be taken by surprise at trial by being called upon to defend against matters of which he had no notice in the pleadings, or to a different cause of action." The wrong proved must be the wrong alleged, not merely another wrong in the same legal category' ": McDermott v. Gekas, 404 Pa. 239 (1961).

Defendant, in order to take advantage of a variance, must object: (1) when the testimony not covered by the pleadings is offered (there was no opportunity to object at that time because plaintiff offered no evidence on a defective appliance); (2) by a motion for nonsuit assigning the divergence as the reason (at conclusion of plaintiffs' case no evidence of a defective appliance had been offered. Thus, there was no basis for a divergence. Even at the conclusion of its own case, defendant had no basis to object, since there was no evidence of a defective appliance although there was a permissible inference); (3) by a point for binding instructions in which the reason is assigned: Malone v. Melnick, 378 Pa. 483 (1954); Slingluff v. Dennis, 376 Pa. 91 (1954).

Defendant did move for binding instructions in its request for charge no. 1 which was denied. With affirmation of plaintiffs' points nos. 4 and 5, to which he objected, counsel was faced with an unanticipated problem. He did argue to the jury that there was no evidence of a defective appliance. Then at the conclusion of the charge he excepted at that time and stated as reasons in support that, in the first place, this was only defense testimony corroborating the bus operator and, secondly, that to view it otherwise would constitute a variance between the allegations in the complaint and plaintiffs' proofs. Under all the circumstances defendant made the best of an unfortunate

situation not of his own making. Here, the request for a directed verdict meets the guidelines set forth in Malone v. Melnick, supra.

In any event, this is more than merely a matter of variance between the pleadings and the proof. The error here is much more basic. The presumption cast upon the carrier is an exception to the general rule as to which party had the burden of proof. This being so, it belies logic that defendant by making a defense to negligent operation of a bus, simultaneously shifted to itself the burden of disproving a completely separate act of negligence, i.e., failure to maintain its equipment in proper operating order.

2. *Was the verdict grossly excessive?*

Plaintiff, Helen Zitkus, at the time of the accident was 29 years old. She suffered an injury to her right ankle and leg. She was treated at Hahnemann Hospital and by her family physician, Dr. Kohn. After one month of treatment the leg did not improve and Dr. Kohn suspected phlebitis. He requested a consultation with an internist specialist in peripheral vascular disease, Dr. Perilstein. Dr. Perilstein confirmed the phlebitis and treated plaintiff for this condition for approximately nine months. Dr. Perilstein testified at trial that plaintiff's condition was brought about by the accident and was chronic and permanent and she would have this condition the rest of her life. Defendant countered with its expert that the condition did not and could not result from the accident. The jury decided otherwise. Even though plaintiff's evidence on loss of earnings and/or earning power was extremely sketchy, nevertheless the verdict in her favor of $15,000 is supported by evidence in the case, and, even though generous, it is not grossly excessive: Hutchinson v. Pennsylvania Railroad, 378 Pa. 24 (1954).

On the other hand, the award of $7,500 to plaintiff-husband is not supported by the evidence. The medical charges for treatment were:

| | |
|---|---:|
| Hahnemann Hospital | $ 40 |
| Dr. Kohn | 95 |
| Dr. Perilstein | 200 |
| Dr. Tomlin | 50 |
| Transportation and drugs (as stated by plaintiff) | 200 |
| | $585 |

There was evidence of active treatment by Dr. Kohn and Dr. Perilstein for about nine months after the accident. Shortly thereafter, plaintiff moved to Shenandoah, Pa. There, she received further treatment by a Dr. Tomlin. The total of Dr. Tomlin's bills amount to $50 for treatment at some unspecified time within a five-year period. Dr. Perilstein testified at trial that, in his opinion, plaintiff will need treatment once a month for the rest of her life and more often in case of an acute flare-up. However, plaintiff had not seen Dr. Kohn or Dr. Perilstein for treatment since she moved to Shenandoah and Dr. Tomlin did not testify. Plaintiff's interim condition involved relatively minor complaints. After the initial treatment, past and current medical treatment was minimal. Based on this evidence, a conclusion of significant future medical charges was unwarranted.

Plaintiff-husband did not testify. As a matter of interest, he was only present in court for the opening day of trial. Without additional testimony, only a relatively small value may be placed on the lost services of his wife. As the record stands, there is little or nothing upon which to base money damages for the loss of his wife's services regardless of how broad a definition one may apply to this type of money damage.

388

On the basis of any and all known standards in evaluating personal injury claims, the verdicts for both husband and wife-plaintiffs were high and out of line with that which one would normally anticipate. On the other hand, as stated hereinbefore, the court would undertake to correct only the award in favor of the husband-plaintiff: Corabi v. Curtis Publishing Co. 437 Pa. 143 (1970).

Thus, had there not been error warranting a new trial in the case the verdict as to plaintiff-husband would have been conditioned on a remittitur of $5,000 or the grant of a new trial on the issue of damages only.

## CONCLUSION

The court erred in submitting the case to the jury on a theory of liability and law not relevant to the facts and pleadings as presented in plaintiffs' case. This was basic error and necessitates a new trial: Izzi v. Philadelphia Transportation Co., 412 Pa. 559, 569 (1963).